OVERTON, Justice.
 

 George W. Hardy, mayor of Shreveport, and Dennis D. Bazer, chief of police thereof, were adjudged guilty, in the First district court, parish of Caddo, of contempt of court, and have applied to this court for writs to review the proceedings had and to stop further proceedings.
 

 The contempt is for the alleged violation of a writ of injunction. The writ was issued in the case of Dawkins, Superintendent of Public Safety, v. Bazer, Chief of Police, 172 La. 327, 134 So. 238, 239. When the decree in the cited case reached the Court of Appeal for the Second Circuit, it ordered a preliminary injunction to issue. 16 La. App. 284, 134 So. 119. When the ease reached the district court again, it was set down for hearing, and, after hearing, the injunction was perpetuated; the pertinent part of the decree being the enjoining of defendant “from disobeying or 'encouraging disobedience to orders issued by the plaintiff as Superintendent of Public Safety * * * or from in any way interfering with petitioner in the general management, control and direction of the police department of the City of Shreveport as such superintendent.” Both the preliminary and permanent injunctions were served upon Bazer. Hardy, the mayor, concedes that he had full knowledge of the terms of the judgments and writs.
 

 Thereupon, plaintiff issued certain general orders and caused them to be posted in the police station. Bazer and Hardy concede full knowledge of these orders. So far as pertinent, the orders are as follows, to state them briefly: (1) Prohibiting patrolmen, motorcycle officers, detectives, commissioned officers, or any one else in the service of the police department of the city of Shreveport from having his position changed or from being shifted from one employment to another, or from one beat to another, or from one station to another, without plaintiff’s written authority; (2) prohibiting the making of any change in the routine of'plaintiff’s business without plaintiff’s written con
 
 *727
 
 sent; (3) prohibiting a raid from being made by any member of the police force, including detectives, without plaintiff’s written authority ; and (4) prohibiting any interference with the personnel of plaintiff’s office and the police station without plaintiff’s written consent.
 

 Act No. 107 of 1908, as does also an ordinance of the city, makes it a misdemeanor to gamble with slot machines for money, merchandise, or any representative of money or checks. Act No. 231 of 1928 authorizes and empowers, and makes it the mandatory duty of all' officers of the state to confiscate and immediately destroy all gambling devices, known as slot machines, that may come to their attention, or that they may find in operation.
 

 The chief of police, with the advice, aid, and encouragement of the mayor, and without any written authority from the superintendent of public safety, although he was accessible, with some fifteen policemen, made a raid and seized and took into possession a number of slot machines simultaneously in the city of Shreveport, two of which were " used to gamble for merchandise, two of which were apparently out of order, and the remainder, which consisted of quite a number, were used to gamble for money. The machines were taken through the principal streets of the city to the city hall and there stored. No arrests were made, and so far the machines have not been destroyed.
 

 Plaintiff conceived the idea that this proceeding was a challenge to his authority as superintendent of public safety, a violation, and a deliberate one, of the written orders, posted by him, and a direct and deliberate violation of the injunction that had issued in his favor against the chief of police. He therefore caused the chief and the mayor to be ruled into court for contempt for violating the injunction. Both, upon trial, were adjudged guilty.
 

 The case of Dawkins v. Bazer, supra, which resulted in the injunction being issued and perpetuated, shpuld be construed in the light of the issues then before the court. That was a contest between Dawkins, as superintendent of public safety, and Bazer, as chief of police. The issues there presented were, first, “In whom is vested the power of direction and control of the police department of the city of Shreveport”; and, secondly, “In whom is vested the authority to appoint the police officers of the city of Shreveport, below the rank of chief of police.” The duties of the mayor were not involved in the suit. This court, in that case, instructed the Court of Appeal that the power of direction and control of the police department was vested in the superintendent of the department of public safety, as is also the authority to .appoint policemen of lower rank than that of chief. In what officer rested the supreme power to see that the laws and ordinances of the city were properly and faithfully executed was in no wise involved in that case, and was not considered. This question is involved here. Let us now ascertain who this officer is.
 

 For some years the city of Shreveport has been finder the Commission Form of Government Act, enacted for the optionable use of certain cities. This act is Act No. 302 of 1910. Prior to the adoption, at an election, of that form of government, the city was under the aldermanic form, and its charter was a. local act, granted to the city by the Legislature, the act being Act No. 158 of 1S98.
 

 
 *729
 
 Section 17 of Act No. 302 of 1910, the Commission Form of Government Act, provides:
 

 “That all of the powers belonging to any city that shall organize under the provisions of this Act, conferred either by its charter, or by law, not inconsistent with, contrary to, or in conflict with the provisions of this Act, shall be preserved to the said city unimpaired to be exercised by the mayor and council elected under the provisions hereof.”
 

 Section 9 of Act No. 158 .of 1898, the charter of the city, in so far as it does not conflict with the act of 1910, or is not inconsistent with it, provides: •
 

 “That the Mayor shall be chief executive oflicer of the city. * * * He shall see that the laws and ordinances are properly and faithfully executed; he shall have general supervision of * * * the preservation of public order and peace, and the enforcement of the ordinances relative thereto.”
 

 There is nothing inconsistent between the quoted provision of the act of 1898 and the act otf 1910. Therefore the part of the section, quoted from the act of 1898, defining the duties and powers of mayor, is still the law, and must be considered in determining the duties of the mayor. This was recognized in Dickson v. Hardy, 177 La. 447, 148 So. 674, with reference to the powers of the mayor, as chief executive of the city, in a matter concerning Cross Lake.
 

 The mayor being the chief executive oflicer otf the city, and being charged with the duty of seeing that the laws and ordinances of the city are faithfully executed, and being charged with general supervision of the preservation of public order and peace and the enforcement of the ordinances relative thereto, his authority, in the very nature of things, primes the authority otf the superintendent of public safety. It was not the intention of the Court of Appeal in issuing, or in ordering to issue the preliminary injunction herein, or of the district court in perpetuating it, to impede* the enforcement of law in the municipality, but to determine the relative duties and powers of the superintendent otf public safety and of the chief of police, and this, both courts did under instructions from this court.
 

 Since the mayor manifestly had reason to think that slot machine laws, both state and municipal, were being violated openly in the city, he had the right to advise and instruct the chief of police, to seize and take possession of the machines, in order to discharge his duty of seeing that the laws and ordinances were faithfully executed, and this without violating the injunction or being in contempt of court.
 

 As to the chief of police, it was his duty to obey the instructions of the mayor lawfully given, whether, given verbally or in writing, and, in doing so, he was not guilty of contempt. This should be sufficient to dispose of the ease against him, but, as the council has, since the issuance of the injunction, passed an ordinance, referred to as the “Power Defining Ordinance,” it will not be amiss to consider that ordinance.
 

 This ordinance, in section 4 thereof, provides that,
 

 “The superintendent otf public safety shall have supervision, as hereinafter set forth, of the following sub-departments: * * * police * * *.
 

 “The superintendent of the department of public safety shall issue general rules and
 
 *731
 
 fix general policies covering the operations of these suh-departinents. He shall inform himself as to the needs and requirements of all of said sub-departments and see that they are properly manned and equipped, and represent said departments in the meetings of the city council.
 

 “The chief of police shall be elected by the council. He shall be the chief executive officer of the police force of the city of Shreveport, and said force shall be subject to him and his orders and he shall direct the operations of the police force of the city of Shreveport in accordance with law.”
 

 The constitutionality of this ordinance was attacked in Dickson v. Hardy, 177 La. 447, 148 So. 674, and its constitutionality upheld on the points attacked. As observed substantially by counsel for the defendants, the ordinance shows that, while the superintendent of public safety is also superintendent of the police department, his duties, with reference to that department, are defined, and his authority is limited to the issuance of general rules and to the fixing of general policies covering the operation of the department. On the other hand, the powers and duties of the chief of police are more specific. He is declared, by the ordinance, to be the chief executive officer of the police force; the force is declared to be subject to his orders, and it is made his duty to direct the operations of the police force of the city according to law.
 

 These provisions contemplate that the duty of the mayor to see that the ordinances of the city, with reference to peace and order, or the general supervising powers of the superintendent of public safety, which are of less dignity than the duties and powers of the mayor, will not be interfered with. They contemplate that, when the chief of police finds that the ordinances of the city or the penal laws of the state are being violated, he, through the police force, will take the necessary steps, under the law, to end the violations, whether it requires the exercise of such specific powers as to seize slot machines or not.
 

 We think that the chief of police has not, by his acts, subjected himself to punishment for contempt of court.
 

 The judgment, under review, is set aside, and judgment is now rendered discharging defendants, and otherwise making the rule nisi absolute.
 

 ST. PAUL, J., absent.