## O. D. JENNINGS & CO. v. MAESTRI, Mayor, et al.

### No. 8795.

Circuit Court of Appeals, Fifth Circuit.

June 28, 1938.

E. E. Talbot and Albert B. Koorie, both of New Orleans, La., for appellant.

Francis P. Burns and Henry B. Curtis, both of New Orleans, La., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was against the Mayor and the Superintendent of Police of the City of New Orleans for an injunction. The complaint was that thirty-five automatic candy venders, which plaintiff had manufactured and consigned to itself in New Orleans, had been seized and confiscated by the defendants as gambling devices under the purported authority of Act No. 231 of 1928;[1] that they were threatening to continue to seize any candy venders found operating or stored in New Orleans, thus preventing plaintiff from carrying on its business, and thereby depriving it of its property without due process of law; and that, without adequate remedy at law, plaintiff will suffer irreparable injury unless injunction issue.

The claim was that the venders were in fact, not "slot machines or similar mechanical devices," as prohibited by Act No. 107 of 1908,[2] but were merely ven-

---

[1] Section 1: "Be it enacted by the Legislature of Louisiana, that all officers of the State of Louisiana are hereby authorized and empowered, and it is made mandatory and compulsory on their part, to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention, or that they may find in operation."

[2] "An Act to amend and re-enact Act 57, of 1898, to prohibit the use, playing or gambling with a 'slot machine' or similar mechanical device, for money, merchandise, or for anything whatever of value, in any place of business, also to prohibit the keeping of a 'slot machine' or similar mechanical device in any place of business, and providing a penalty for the violation thereof.

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That Act 57 of 1898 be amended and re-enacted so as to read as follows:

"That whoever shall gamble with, use or play a 'slot machine' or similar mechanical device for money, or representative of money or checks, or for merchandise, or any prize or anything whatever of value, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in the sum of not

ders, which, in addition to the package of mints and other confections, worth the five cents inserted in the slot, from time to time delivered metal tokens, marked "for amusement only", which, when inserted in the machine, produced combinations of humorous sayings. In support of the claim that the seizure was illegal, it was alleged that the criminal district court of the Parish of Orleans, in November, 1926, had held a vender identical in its vending and amusement operations with that of those seized by the defendant, to be a legal vender, and not a gambling device in violation of Louisiana law. The prayer was that the defendants be restrained and enjoined to desist and refrain from unlawfully seizing, levying, or taking possession of and from confiscating any of plaintiff's venders, and from in any manner interfering with the lawful operation of said machines.

The defense was want of jurisdiction, want of equity in the bill, and that the venders in question were gambling devices commonly called "slot machines" thinly disguised as candy venders; that by a comparatively simple operation the machines could be changed into coin playing devices, and further, that if this was not so, all of said machines are slot machines within the meaning and terms of the Louisiana law, because at irregular intervals, depending entirely upon luck or chance, and thus in violation of the Louisiana law, they will deliver in addition to the candies or mints vended, prizes having value, towit, tokens, entitling the lucky players to a free play. These, when played into the machine, will cause it to produce various silly soothsayings, calculated to amuse the puerile and the jaded, for whom the clicks and revolutions of a slot machine have always had a special appeal. It was specifically denied that any court in Louisiana had held the statute, under which the machines were seized, inapplicable to them, or to machines of that nature and character. It was alleged that the courts of last resort in that State had precisely distinguished between true automatic venders and their counterfeits, and had held the statute fully effective against the counterfeits.

The proof showed the consignment to plaintiff in New Orleans, and the storage in a public warehouse there, of the slot machines in question; the sale of four of them, the placing of some of them in use, the seizure of the four sold and of those remaining in the warehouse. It showed, too, the requisite diversity and the amount in controversy to afford jurisdiction, and that the seizure and confiscation of the machines is preventing, and will prevent, plaintiff from carrying on its business of selling them in Louisiana.

Plaintiff proved that in 1926, two years before the Act of seizure was passed, one Ashcraft was informed against in Criminal No. 35953 on the docket of Section "B" of the criminal district court for the Parish of Orleans, for a violation of Act No. 107 of 1908, in that, being the proprietor of a restaurant in the City of New Orleans, he "did have and permit therein certain mechanical devices, known as slot machines, operated, used, played and gambled with for money and representatives of money, prizes and things of value;" that he was tried and found "not guilty."

In support of its claim that the acquittal was an adjudication by the criminal district court that machines of the character in question here are not slot machines, plaintiff proved by the assistant district attorney, and the attorney for the defense in that case, that the devices on which the prosecution there was based

---

less than twenty-five dollars, nor more than two hundred dollars, or be imprisoned not less than thirty days, nor more than ninety days, or both at the discretion of the court.

"Section 2. Be it further enacted, etc. That any owner, lessee, tenant or proprietor of any premises or building, who shall have or permit in or about same, or connected therewith any 'slot machine' or similar mechanical device operated in violation of Section 1, of this Act, or any owner, lessee, tenant or proprietor of any premises or building where business of any nature is conducted, who permits or allows a 'slot machine,' or similar mechanical device, even though such 'slot machine' or similar mechanical device be not in use, to remain in such building, or on such premises, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than twenty-five dollars, nor more than two hundred dollars, or be imprisoned for not less than thirty days, nor more than ninety days, or both at the discretion of the court.

"Section 3. Be it further enacted etc. That all laws, and parts of laws in conflict herewith, are hereby repealed."

were identical in construction and operation with the devices seized in this suit, and that the only issue tendered and decided in that case was whether or not such vending machines were within the prohibition of Act No. 107 of 1908, slot machines, or gambling devices per se; that in deciding the case the court announced that the acquittal was based upon the ground that the machines in question were not gambling devices per se; that thereafter the district attorney nolle prossed seventeen other prosecutions pending on account of machines of similar character, and they were ordered returned to the defendant.

Charles Miceli, who had bought some of the machines from plaintiff, and installed them in premises for use, testified that they were installed on a profit sharing basis, and with the distinct understanding that the tokens ejected from the venders had no cash or trade-in value, and were not to be redeemed for cash or merchandise. He testified further that when he learned that the venders he had thus placed had been seized and destroyed, he protested that they were not illegal machines, that they ought not to be destroyed; that if they were deemed to be illegal there should have been a prosecution; that the officer he protested to told him he did not intend to prosecute but would destroy the machines. There was also an affidavit that the arresting officer had endeavored to use the tokens gotten from playing the machine as trade-ins for merchandise, and he had been unable to do so. On the defendant's part there was testimony that there are at present many legal automatic vending machines, selling Coca-Cola and other merchandise, in the city of New Orleans; that tests made of the machines in question here showed that they could easily be converted into money paying machines by any one with a fair amount of mechanical skill; that in view of the fact that there was no way for a police officer to ascertain whether the internal mechanism of the machine had been adjusted to make it a coin paying one, it would be impossible for a police officer to enforce the laws if the injunction prayed for should issue. There was testimony too, of defendant Reyer that even if the machines were so constructed as to make it impossible for them to pay off in coins, instead of in tokens; the fact that they so paid off in tokens rendered them a gambling device;

that it has been the experience and observation of defendant over more than twenty years on the police force, that the purpose of establishing machines which paid off in tokens was to redeem the tokens with cash or merchandise.

Defendants offered also certified copy of proceedings in the criminal district court, Parish of Orleans v. Ashcraft, No. 57943, showing that on March 9, 1931, on motion of the District Attorney, certain slot machines stipulated to be substantially the same as those in suit, which had been seized from one Ashcraft under the Act of 1928, were destroyed. These machines were so constructed as that each would, for five cents, vend a package of mints, and in addition thereto at irregular intervals, eject tokens in various numbers. These tokens could be used to play the machine again, but not to obtain mints from it. They could, too, be inserted into and operate coin box telephones, but such use of them would be in violation of law. Finally, it was established that while the machines could be converted into coin playing devices by mechanical changes, it was not easy to do so.

The District Judge, in a well considered opinion, announced the view that the seizure of the machines under the law of 1928, ought not to be enjoined; that the acquittal of Ashcraft, in 1926, relied on by complainant, was not in any sense, indeed could not be, a binding decision as to the construction and application of the Act of 1928, and as to whether an injunction should or should not issue to prevent seizure under it; that the machines were slot machines, and could be seized under the Louisiana law, both because they could be operated as gambling devices, paying off in money or valuable merchandise, and because, by the operation of the laws of chance, they delivered things of value, towit, tokens, the playing of which afforded amusement to those thus inclined.

■ We agree with the District Judge. We think Louisiana law, in prohibiting the use of slot machines, prohibited devices like these by the playing of which, under the operation of the laws of chance, the player may get more than he pays for. Further, we think it clear that the District Judge used, rather than abused, the discretion vested in him, in declining to interfere by injunction, with state officers in the campaign of suppression then being

waged against these machines by those duly charged with enforcing the Louisiana laws.

Appellant, while citing general authorities which do support his view, that machines operating as these do, when played as at present arranged and equipped, are not gambling devices, admits that there are authorities holding differently.[3] Appellant's real contention is that the Federal court in Louisiana is not free to follow the leading of authorities from other states and jurisdictions, as to whether the devices are gambling devices, or its own judgment as to what the Louisiana statutes mean, but must give them the meaning accorded them by the Louisiana courts; that the acquittal in the Ashcraft case is the only applicable decision of Louisiana courts applying the statute to machines of the kind in question, and the Federal court is bound to follow it.

■ We agree with the District Judge that the fact that a judge of the criminal district court of the Parish of Orleans many years before, acquitted the defendant of operating, or gambling with, machines similar to these, is without weight or bearing here. That acquittal was certainly not a construction of the Act of 1928; nor is it as a construction of Act No. 107 of 1908, binding upon or even persuasive, with us. Erie R. Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, 114 A.L.R. 1487, and Ruhlin v. New York Life Ins. Co., 58 S.Ct. 860, 82 L.Ed. ——, of which appellant makes so much, do not at all support appellant in his contention. They were not cases of the construction of statutes or of local law; they decided merely that the rules of decision theretofore applied in cases of statute or local law, should apply in matters of general law. What was decided, as distinguished from what was said,[4] in Erie R. Co. v. Tompkins, is found in this sentence (page 822):

"Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law."

The gist of the Ruhlin Case is found here (page 862)—

"Application of the 'State law' to the present case, or any other controversy controlled by Erie R. Co. v. Tompkins, does not present the disputants with duties difficult or strange. The parties and the federal courts must now search for and apply the entire body of substantive law governing an identical action in the state courts. Hitherto, even in what were termed matters of 'general' law, counsel had to investigate the enactments of the state Legislature. Now they must merely broaden their inquiry to include the decisions of the state courts, just as they would in a case tried in the state court, and just as they have always done in actions brought in the federal courts involving what were known as matters of 'local' law."

Nothing in either of these decisions declares or suggests that a Federal court, in determining the construction of a statute of a state, must look to or be governed by the acquittal or conviction, in a nisi prius court, of a defendant prosecuted under it. None of the other cases appellant cites so hold. But if we could assume, as appellant contends, that the acquittal in the Ashcraft case was a construction of Act No. 107 of 1908, it would not at all follow that the decree appealed from should be reversed. What is in question here is not the construction of that statute in a criminal case, but whether the equity powers of a Federal court must be exerted to interfere with state police acting under the mandate of Act No. 231 of 1928, that they seize and suppress gambling devices.

■ It is settled by the decisions of Louisiana that it is both the right and duty of the law enforcing officers, under the Act of 1928, to seize and confiscate slot machines. Dawkins v. Bazar, 179 La. 724, 155 So. 3; Tonahill v. Molony, 156

3 Some of these are, Green v. Hart, D.C., 41 F.2d 855; White v. Hesse, 60 App.D.C. 106, 48 F.2d 1018; Boynton v. Ellis, 10 Cir., 57 F.2d 665; Boynton v. Mills Novelty Co., 10 Cir., 60 F.2d 125; State ex rel. Manchester v. Marvin, 211 Iowa 462, 233 N.W. 486; Mills Novelty Co.'s Appeal, 316 Pa. 449, 175

A. 548; c/f Harvie v. Heise, 150 S.C. 277, 148 S.E. 66; Chambers v. Bachtel, 5 Cir., 55 F.2d 851; Mills v. Browning, Tex.Civ.App., 59 S.W.2d 219.

4 See "What has happened to Federal Jurisprudence," A.B.A.Journal, Vol. 24, p. 421, et seq.

La. 753, 101 So. 130. No court of last resort in Louisiana has considered or passed upon the question raised in the first Ashcraft case: In a later proceeding, taken in 1931, against the same Ashcraft, the same criminal district court destroyed similar machines to these, which had been seized under the Act of 1928. No court of last resort in Louisiana has construed the Act of 1928 as applied to machines of this kind.

In this state of the law, a Federal equity court should rather stay, than reach forth, its hand to interfere with the action of police officers, where, as here, there is no settled Louisiana decision on the question, and there is a substantial body of judicial opinion elsewhere, that the machine is not a true merchandise vender, but a slot machine for gambling, disguised as a vender. In such circumstances, at least until the state courts of Louisiana have definitely decided that the devices may not be seized under the Act of 1928, the Federal court should decline to interfere by injunction. Bradford v. Hurt, 5 Cir., 84 F.2d 722.

We find no error in the action of the District Court in refusing an injunction. Its decree is

Affirmed.