458 So.2d 1295 (1984)
Taylor Ruben ADAMS
v.
STATE of Louisiana, DEPARTMENT OF HEALTH AND HUMAN RESOURCES.
No. 84-CA-1316.
Supreme Court of Louisiana.
November 26, 1984.
Rehearing Denied January 4, 1985.
*1297 William J. Guste, Jr., Atty. Gen., Leonard K. Knapp, Dist. Atty., Lydia Guillory-Lee, Asst. Dist. Atty., for defendant-appellant.
Oliver Schrumpf, Charles Schrumpf, Sumpter & Schrumpf, Sulphur, for plaintiff-appellee.
BLANCHE, Justice.
Taylor Ruben Adams is the owner and manufacturer of individual sewerage treatment plants for rural communities which are unable to utilize municipal sewerage treatment systems. His treatment system has the trade name "Sani-Robic", and is also informally known as the "Buddy System". In 1979, criminal charges were brought against him for installing these sewer systems without a permit in violation of Sections 10:30 and 10:31.1 of the Louisiana Sanitary Code. In 1981, the trial court found that the provisions of the Sanitary Code sought to be enforced against Adams were unconstitutional and quashed the indictment. No appeal was taken from that judgment. In November of 1983, Adams filed a suit for declaratory judgment against the State of Louisiana to have the Sanitary Code declared unconstitutional. The State of Louisiana responded by filing a reconventional demand seeking to enjoin him civily from selling any further sewerage treatment systems without first submitting the plans for installation of each sewerage treatment system and obtaining a valid permit from the Department of Health and Human Resources for their installation. On March 16, 1984, the trial court sustained an exception of no cause of action filed by Adams on the grounds that the statutes authorizing the Department of Health and Human Resources to draft regulations controlling the manufacture and sale of individual sewerage treatment systems do not contain sufficient guidelines or standards to constitute a constitutional delegation of legislative authority. Since this appeal involves the declaration of unconstitutionality of a state statute, this suit was transferred by the Third Circuit Court of Appeal to this court for review.

I.
The trial court held that the Louisiana Sanitary Code is unconstitutional because it delegates legislative power to the Department of Health and Human Resources (DHHR) without specifying sufficient standards or guidelines within which the DHHR may act.
La.R.S. 40:4(A) provides:
A. The state health officer acting through the office of health services and environmental quality of the Department of Health and Human Resources, shall prepare, promulgate, and enforce rules and regulations embodied within the state's sanitary code covering all matters within his jurisdiction as defined and set forth in R.S. 40:5. The promulgation of this sanitary code shall be accomplished in strict accordance with the provisions of the Administrative Procedure Act, R.S. 49:951, et seq., and further, in conformity with the following guidelines and directives.
Paragraph 6 further provides:
(6) In order to protect the public against disease and nuisance resulting from the improper disposal of sanitary sewerage, the state health officer shall prepare and promulgate all rules and regulations necessary to insure that adequate conveyance and disposal facilities are provided for all sanitary sewerage, private or public, and in such a manner that will prevent the contamination of surroundings which would have an adverse impact on drinking water supplies, recreational waters, acquatic life, and other mechanisms of human exposure to disease. Standards for the quality of sanitary sewerage discharged to the ground surface (ditches, streams, water pools, or other drainage courses), construction *1298 of sewerage works, operation of sanitary sewerage conveyance, and treatment and disposal facilities shall be included. Plans and specifications for sewerage works shall be submitted for review and approval to the state health officer or his designee.
Article II, § 1 of the 1974 Louisiana Constitution divides the powers of government into three separate branches: legislative, executive and judicial. Article II, § 2 provides that no one of these branches may exercise power belonging to either of the other. The legislative power of the state is vested exclusively in the legislature. La. Const. art. III, § 1. It is from these provisions that we derive the general principal "that legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body or authority." State v. Broom, 439 So.2d 357 (La.1983); City of Alexandria v. Alexandria Firefighters Association, 220 La.754, 57 So.2d 673 (La.1952).
If the Constitution were applied literally, it would preclude any delegation of legislative power to a non-legislative body. Such an application of these principles would unduly hamper the Legislature in the exercise of its constitutionally vested powers. Accordingly, the courts have repeatedly recognized that there are exceptions to the non-delegation doctrine. State v. Broom, supra; State v. Union Tank Car Company, 439 So.2d 377 (La.1983); United States v. Shreveport Grain and Elevator, 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932); State v. Guidry, 142 La.422, 76 So. 843 (1917).
In determining whether a particular delegation of legislative authority is unconstitutional, this court has relied on the rule established in Schwegmann Brothers Giant Super Markets v. McCrory, Commissioner of Agriculture, 237 La.768, 112 So.2d 606, 613 (La.1959):
So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature.
Consistent with this principle, Louisiana courts have upheld the constitutionality of statutes delegating broad powers to administrative officers to determine the details of legislative scheme where those statutes express a clear legislative policy and contain sufficient standards for the guidance of the administrative official empowered to execute the law. State v. Union Tank Car Company, supra; Johnson v. Pierce, 313 So.2d 812 (La.1975); City of Lake Charles v. Wallace, 247 La.285, 170 So.2d 654 (La.1965). Likewise, this court has fashioned a two prong test in order to prevent the unconstitutional delegation of legislative authority. Under this test, there must be (1) a clear expression of legislative policy accompanied by sufficient standards to prevent the exercise of arbitrary power by the administrative body and (2) adequate procedural safeguards to protect against abuse of discretion by those to whom the power is delegated. State v. Union Tank Car Company, supra; State v. Rodriguez, 379 So.2d 1084 (La.1980).
La.R.S. 40:4(A)(6) provides that the state health officer shall prepare and promulgate all rules and regulations necessary to insure that adequate conveyance and disposal facilities are provided for all sanitary sewerage. The purpose of these regulations is to prevent disease, contamination of water supplies, adverse effects on recreational waters and acquatic life and to prevent any nuisance resulting from the improper disposal of sewerage. The policy behind the Sanitary Code's provisions on sewerage disposal is thus quite clear. In State v. Union Tank Car Company, supra, we found that the policy to promote an environment free from pollution was a valid exercise of the State's police power to protect the public health and that it established a definite policy of the State which permits an administrative body to make rules and regulations necessary for the administration *1299 of that policy. Similarly, in Johnson v. Pierce, supra, we found that the control and eradication of brucellosis was a proper legislative goal and that it was also sufficient to guide an administrative body delegated by the legislature. Based on the rationale in Johnson and Union Tank Car Company, the policy of the Louisiana Sanitary Code in regard to sewerage disposal, which is to prevent disease and the contamination of water supplies from improper sewerage disposal, is also a valid exercise of the State's police power to protect the public health and is clearly adequate to support a delegation of legislative authority.
Since the legislature has adequately stated its intent with respect to sewerage disposal, we must now determine whether the standards accompanying this declaration of legislative intent gives adequate guidelines to the Department of Health and Human Resources in promulgating the necessary regulations for the control of sewerage disposal. In testing the constitutional sufficiency of the standards prescribed in these statutes, regard must be given to the purpose and scope of the act, the subject matters covered therein, the duties prescribed, and the broad or narrow powers granted. State v. Union Tank Car Company, supra; Bortz Coal Co. v. Air Pollution Commission, 2 Pa.Cmwlth. 441, 279 A.2d 388 (Pa.1971).
La.R.S. 40:3 provides that a state health officer shall be designated by the DHHR. La.R.S. 40:4(A) further provides that the state health office, through the DHHR, shall prepare and enforce rules and regulations embodied within the state's sanitary code covering all matters within his jurisdiction as defined and set forth in R.S. 40:5. The treatment and disposal of municipal and domestic sewerage is specifically made part of the jurisdiction of the DHHR's state health officer in R.S. 40:5. In further defining the authority of the state health officer with regard to sewerage disposal, R.S. 40:4(A)(6) provides that standards for the quality of sanitary sewerage discharged to the ground surface, construction of sewerage works, operation of sanitary sewerage conveyance and treatment and disposal facilities shall be included. Likewise plans and specifications for sewerage works shall be submitted for review and approval by the state health officer. Although the legislature has granted the DHHR broad powers, we conclude that they are adequate to support a constitutional delegation of authority. Likewise, even though the exact requirements for the issuance of licenses and permits are not specifically stated they may be inferred from the statutory scheme as a whole. State v. Union Tank Car Company, supra. It is evident that the DHHR may not arbitrarily deny an individual a permit, but rather they must base their decision upon whether or not the proposed sewerage system poses a danger to the health and welfare of the public. This standard is sufficient to guide the DHHR in its enforcement of the legislative will. Likewise, the method of enforcement is the denial of permits to those sewerage treatment plants which pose a threat to the health and welfare of the public. Clearly, R.S. 40:1 through 40:5 provide sufficient guidelines and standards to prevent the arbitrary action by the DHHR.
In addition, the legislature has incorporated the procedural safeguards invoked by the Administrative Procedure Act, La.R.S. 49:951-970 into the promulgation of the Sanitary Code, thereby insuring ample protection against arbitrary action of the DHHR in adopting the regulations. La. R.S. 40:4, State v. Union Tank Car Company, supra.
Therefore, considering the expressed policy and standards enacted by the legislature, we conclude that the Sanitary Code does not involve an unconstitutional delegation of legislative authority.[1]

*1300 II.
Mr. Adams further contends that the regulations he is charged with violating are vague and uncertain which therefore makes them unconstitutional. He is charged with violating Chapter 10, Sections 10:30 and 10:31 of the Sanitary Code of Louisiana, the Regulations Controlling Sewerage Disposal for Individual Rural Homes as published in the Louisiana Register, Vol. 6, No. 3, March 20, 1983, Paragraph VI and Calcasieu Parish Ordinance 2128.
Section 10:30 provides that a person or organization may not install individual sewerage disposal systems without obtaining a permit for such installation from the State Health officer. Section 10:31 further provides that plans and specifications must be submitted for each installation at the time of application for the permit. In order to provide guidelines on whether a sewerage treatment plant will be approved and a permit issued, Regulations Controlling Sewerage Disposal for Individual Rural Homes was published in the Louisiana Register. Paragraph 6.4 provides that sewerage treatment plants must comply with "Standard 40 Relating to Individual Aerobic Plants" adopted by the Board of Trustees of the National Sanitation Foundation (NSF) and Paragraph 6.5 further provides that only Class I plants as defined by the NSF will be permitted in Louisiana. NSF Standard Number 40 clearly states the minimum requirements for sewerage treatment plants.[2] Paragraph 6.6 of the Regulations for Sewerage Disposal also requires that individuals intending to sell sewerage treatment plants in Louisiana shall submit for approval evaluation reports prepared by an independent testing laboratory and obtain approval for such plants by complying with the provisions of NSF Standard Number 40 prior to selling sewerage treatment plants in the State of Louisiana. Finally, Ordinance 2128 of Calcasieu Parish provides that an individual must obtain a permit from the Calcasieu Parish Health Unit prior to installing an individual sewerage system. Section 2, which was repealed in July of 1983 provided that the applicant must comply with the Sanitary Code. This provision was not in effect in November of 1983 when this suit was filed by Mr. Adams.
These provisions cannot be found to be anything but clear and definite. An individual who desires to sell individual sewerage systems must comply with the minimum standards established by NSF Standard Number 40. If the standards are met, a permit will be issued by the DHHR. If the standards are not met, the permit will be denied. The standards required by the Sanitary Code are clear and precise and leave little room for arbitrary action by the DHHR. We therefore find no merit in the argument that these provisions are unconstitutionally vague.

III.
Adams presents several other grounds in order to prevent the enforcement of the Sanitary Code. First, Adams contends that because the criminal provisions of the Sanitary Code were declared unconstitutional by the District Court in 1981 in a criminal proceeding in which he was the defendant, this civil suit is res judicata. Under Louisiana Civil Code Article 2286, in order for an issue to be res judicata, the thing demanded must be the same, the cause of action must be the same, and the parties must be the same. *1301 R.G. Claitors Realty v. Juban, 391 So.2d 394 (La.1980); Welch v. Crown Zellerbach Corporation, 359 So.2d 154 (La.1978). In the prior suit, the thing demanded was criminal sanctions. In this suit, the thing demanded is civil sanctions. Since the thing demanded is not identical in both suits, this suit is not precluded by the doctrine of res judicata. Additionally, an acquittal on a criminal charge is not a bar to a civil action. City of New Orleans v. Lafon, 61 So.2d 270 (La.App.1952); O.D. Jennings and Company v. Maestri, 97 F.2d 679 (5th Cir.1938). We therefore find no merit in plaintiff's argument that this suit is res judicata.
Adams also contends that enforcement of these regulations violates due process in that it is a taking without compensation. He also alleges that it violates equal protection by discriminating against the poor because it will cost him additional money to have his system properly tested and approved. We also find no merit in either of these arguments. Louisiana Board of Examiners in Watchmaking v. Morrow, 188 So.2d 160 (La.App.4th Cir. 1966); Mitchell v. Louisiana State Board of Optometry Examiners, 146 So.2d 863 (La.App.3rd Cir.1962).

DECREE
For the reasons assigned, the judgment of the trial court declaring the Louisiana Sanitary Code unconstitutional is reversed. Judgment is further rendered herein reinstating the defendant's reconventional demand for an injunction and the matter is remanded to the trial court for further proceedings in accordance with law.
REVERSED AND REMANDED
DIXON, C.J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
This statute adequately expresses the ultimate intent of the legislature; but when it comes to standards for the delegated legislative power, it only directs that the health officer in his sanitary code establish "standards for the quality of sanitary sewerage discharged."
The legislature ought not be able to meet the "standards" requirement for delegating the legislative power by directing the administrative agency to establish standards.
NOTES
[1] Since the DHHR seeks only to enjoin Mr. Adams from the future sale of his sewerage treatment plants, it should be noted that we are only asked to decide in this case the constitutionality of the civil provisions of the Sanitary Code. In State v. Broom, supra, this court held that the legislature cannot delegate the right to define felony offenses to administrative bodies. Therefore, there may be some doubt as to the constitutionality of R.S. 40:6 which provides for misdemeanor criminal penalties for violations of the Sanitary Code. Nonetheless, we are not required to pass on the constitutionality of that provision in order to reach our result in this case.
[2] Section 6 requires the arithmetic mean of all effluent samples collected in a period of 30 consecutive testing days to be less than or equal to 30 milligrams per liter and greater than or equal to 85% removal. Also the arithmetic mean of all effluent samples collected in a period of 7 consecutive days should be less than or equal to 45 milligrams per liter. Effluent values of pH shall remain between the limits of 6.0 and 9.0.