753 So.2d 156 (1999)
STATE of Louisiana
v.
Tracy R. ALFONSO, et al.
No. 99-KA-1546.
Supreme Court of Louisiana.
November 23, 1999.
Opinion Granting Rehearing in part December 7, 1999.
*157 Richard P. Ieyoub, Attorney General, John F. Rowley, District Attorney, Mary Ellen Hunley, Baton Rouge, Darren Michael Roy, Arabi, Counsel for Applicant.
Wayne George Cresap, Claude Salvador Mumphrey, II, John Wayne Mumphrey, Chalmette, Daniel Morales, Sr., Jacques Allen Sanborn, Chalmette, Robert L. Royce, Jr., Alan John Abadie, Chalmette, Louis Battle, Glenn M. Davis, Jr., Philip K. Matinez, Scott M. Melerine, Daniel Morales, Jr., Trong Nguyen, Houston, TX, Manuel A. Fernandez, Chalmette, Tracy Richardson, Wayne M. Melerine, Counsel for Respondent.
LEMMON, Justice.[*]
This is a direct appeal to this court, pursuant to La. Const. art. V, § 5(D), from a judgment of the trial court declaring unconstitutional certain sections of La.Rev. Stat. 56:333,[1] as well as La. Adm.Code tit. 76, Part VII, § 343(E)(5) (1995).

Facts
The defendants in these consolidated criminal proceedings are forty commercial fishermen who held permits for the commercial fishing of mullet. They were charged by separate affidavits with committing the offenses shown on the following copy of one of the affidavits:
*158 
La. Adm.Code tit. 76, Part VII, § 343(E)(5) (1995), as adopted by the Wildlife and Fisheries Commission (Commission) purportedly pursuant to La.Rev. Stat. 56:333 A, requires each mullet permit holder to file information returns monthly during the three-month mullet season fixed by the Legislature, reporting the number of pounds of mullet taken commercially during the preceding month and the commercial dealers to whom the mullet were sold. The criminal charges filed against the forty defendants were apparently based on audits of seafood dealers and commercial fishermen by enforcement personnel of the Department of Wildlife and Fisheries (DWF).[2] Comparison of the audits revealed that the forty defendants had failed to submit information returns, as required by the Commission's rules, of mullet catches in October, November and December 1997 totaling more than 500,000 pounds. The DWF then filed affidavits to institute these criminal proceedings against the forty fishermen,[3] subjecting them under La.Rev.Stat. 56:333 F to permanent forfeiture of their mullet fishing permits.
The defendants moved to quash the charges, asserting the unconstitutionality of the Commission's administrative rule and of La.Rev.Stat. 56:333 A, the section of the statute that purportedly authorized the adoption of the rule. The defendants attacked the administrative rule and Section 333 A on numerous grounds.
After a hearing on the motion to quash, the trial judge declared La. Adm.Code tit. 76, Part VII, § 343(E)(5) (1995) unconstitutional as an impermissible exercise of *159 legislative authority by the executive the executive branch of the government. In addition, the trial court held that the sentencing provision of La.Rev.Stat. 56:333 F was unconstitutionally excessive.

Wildlife Laws and Regulations
The control and supervision of the wildlife of the state, including all aquatic life, is vested in the Wildlife and Fisheries Commission by La. Const. art. IX, § 7. The Louisiana statutes pertaining to wildlife and fisheries are generally contained in Title 56 of the Revised Statutes.
La.Rev.Stat. 56:6(25)(a), pertaining to all wildlife and fish, authorizes the Commission to "promulgate rules and regulations, subject to the provisions of the Administrative Procedures Act, to set seasons, times, places, size limits, quotas, daily take, and possession limits, based upon biological and technical data...." Section 6(25)(a) further provides in part:
Any such rule or regulation shall have as its objective the sound conservation, preservation, replenishment, and management of that species for maximum continuing social and economic benefit to the state without overfishing that causes short-term or long-term biological damage to any species, and regarding all species of fish, without overfishing leads to such damage. Any season, time, place, size, quota, daily take or possession limit currently set by law shall be superseded upon promulgation by the commission of new rules and regulations concerning a particular species.... Penalties for violation of rules and regulations set by the commission pursuant to this Section shall be established by law.
Part VII of Title 56, entitled Fish and Other Aquatic Life, deals generally with the regulation of sport and commercial fishing. La.Rev.Stat. 56:333, which governs particularly the fishing of mullet, provides in part:
A. The Louisiana Wildlife and Fisheries Commission shall adopt rules to regulate the taking of mullet. Such regulations, except as provided in Subsection B of this Section, shall provide for zones, permits, fees, and other provisions necessary to implement this Section.
. . .
F. Any person convicted of any offense involving fisheries laws or regulations shall forfeit any permit or license issued to commercially take mullet and shall forever be barred from receiving any permit or license to commercially take mullet. Any person who, after having been barred from the commercial mullet fishery pursuant to this Subsection, violates any provision of this Section shall be penalized under the provisions of a Class 7-B regulation, R.S. 56:37.
G. (1) The commission shall make an annual peer reviewed and evaluated report to the legislature no later than March first that contains the following information on mullet:
(a) The spawning potential ratio.
(b) A biological condition and profile of the species and stock assessment.
(2) If the report shows that the spawning potential ratio is below thirty percent, the department shall close the season within two weeks for a period of at least one year.[4]
Purportedly acting under the authority of La.Rev.Stat. 56:333 A, the Commission *160 adopted La. Admin. Code tit. 76, Part VII, § 343 (1995). Subsections 343A-D (except for commercial and recreational limits and cost of permits), as well as Subsection F and most of E, substantially track La.Rev.Stat. 56:333. However, Section 343(E)(5) of the Code contains the additional provision that forms the basis of the criminal charges here at issue. Section 343(E)(5) provides:
5. Each Mullet Permit holder shall, on or before the 10th of each month of the open season, submit an information return to the department on forms provided or approved for this purpose, including the pounds of mullet taken commercially during the preceding month, and the commercial dealers to whom these were sold. Monthly reports shall be filed, even if catch or effort is zero.
Significantly, the Legislature, long before the Commission's adoption of the administrative rule here at issue, had imposed a comprehensive statutory reporting requirement both on commercial fishermen and on wholesale and retail dealers. La. Rev.Stat. 56:345 B required commercial fishermen, who sold any fish to anyone other than a resident wholesale or retail dealer, to file a report monthly to the DWF "showing in detail the quantity of each kind of fish sold during the preceding month."[5] The penalty for a first violation of Section 345 B is a fine of $250 to $500 and imprisonment of not more than ninety days.

Unconstitutional Delegation/Exercise of Legislative Power
The primary issue in this case is whether La. Adm.Code tit. 76, Part VII, § 343(E)(5) (1995) is unconstitutional because the Legislature either could not or did not validly delegate to the Wildlife and Fisheries Commission, which under La. Const. art. IX, § 7 and La.Rev.Stat. 56:1 is in the executive branch of state government, the authority to adopt the rule.[6]
Legislative power rests exclusively in the Legislature.[7] This legislative power includes the power to create and define criminal offenses and their penalties.[8] Primary legislative power, strictly speaking, may not be delegated, but administrative and ministerial functions may, by statute, be delegated to an agency in the executive branch.
Delegation of certain administrative functions is necessary because of the vast amount of governmental functions that are vested in the legislative branch, which cannot possibly enact and re-enact detailed laws to cover every situation during rapidly changing times. By establishing primary standards and then delegating to an agency the task of adjusting these standards to current conditions, the legislative body has necessary flexibility in the face of *161 changing circumstances, particularly in an era of rapidly developing technology. Alfred C. Aman, Jr. and William T. Mayton, Administrative Law 10-11 (1993). Moreover, the legislative body may wish to utilize the particular skills and experience of various administrative agencies. Id. When the legislative body, in delegating powers, clearly expresses its policy and provides sufficient standards, judicial review of the exercise of the means chosen by the agency in exercising its delegated power provides a safeguard against abuse by the agency. Laurence H. Tribe, American Constitutional Law § 5-17 (2d ed.1988).
This court, while recognizing that the Louisiana Constitution unequivocally mandates the separation of powers among the three branches of state government, has traditionally distinguished in delegation cases between delegation of legislative authority, which necessarily violates the separation of powers, and delegation of ministerial or administrative authority, which does not. State v. All Pro Paint and Body Shop, Inc., 93-1316, pp. 6-7 (La.7/5/94), 639 So.2d 707, 711. Accordingly, although the Legislature may not delegate primary legislative power, it may declare its will and, after fixing a primary standard, may confer upon administrative officers in the executive branch the power to "fill up the details" by prescribing administrative rules and regulations. Adams v. State Dep't of Health, 458 So.2d 1295, 1298 (La.1984). Thus the Legislature may delegate to administrative boards and agencies of the state the power "to ascertain and determine the facts upon which the laws are to be applied and enforced." State v. Taylor, 479 So.2d 339, 341 (La. 1985).
This court, in determining whether a particular delegation of power is constitutional, has applied the following approach enunciated in Schwegmann Bros. Giant Super Mkts. v. McCrory, 237 La. 768, 788, 112 So.2d 606, 613, appeal dismissed, 361 U.S. 114, 80 S.Ct. 207, 4 L.Ed.2d 154 (1959):
It is now well settled that the Legislature may make the operation or application of a statute contingent upon the existence of certain conditions, and may delegate to some executive or administrative board the power to determine the existence of such facts and to carry out the terms of the statute. So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in nature. (footnotes omitted).
Guided by the principles set forth in Schwegmann and inherent in the constitutional separation of powers, this court has fashioned a three-prong test for determining, on a case-by-case basis, whether a statute unconstitutionally delegates legislative authority, as opposed to administrative or ministerial authority, to an administrative agency. Under this test, a delegation of authority to an administrative agency is constitutionally valid if the enabling statute (l) contains a clear expression of legislative policy; (2) prescribes sufficient standards to guide the agency in the execution of that policy; and (3) is accompanied by adequate procedural safeguards to protect against abuse of discretion by the agency. State v. All Pro Paint and Body Shop, Inc., 93-1316, p. 7 (La.7/5/94), 639 So.2d 707, 712. Application of the Schwegmann three-prong test ensures the elected members of the Legislature retain all legislative power by insisting that they, and not their delegates in the executive branch, make the difficult policy choices for which they are accountable to the public through the democratic process. State v. All Pro Paint and Body Shop, Inc., at p. 8, 639 So.2d at 712.
*162 Significantly in this case, even when the Legislature has properly delegated to an agency certain administrative or ministerial authority, the regulations promulgated by the agency may not exceed the authorization delegated by the Legislature. State v. Domangue, 93-1953, p. 5 (La.App. 1st Cir.12/22/94), 649 So.2d 1034, 1038. An agency exercising delegated authority is not free to pursue any and all ends, but can assert authority only over those ends which are connected with the task delegated by the legislative body. Tribe, supra. The open-ended discretion to choose ends is the essence of legislative power; it is this power that the legislative body possesses, but its agents lack. Id.
In the present case, the Legislature in La.Rev.Stat. 56:333 A delegated to the Wildlife and Fisheries Commission the power to "adopt rules to regulate the taking of mullet," expressly stating that such regulations "shall provide for zones, permits, fees, and other provisions necessary to implement this Section." This power clearly does not involve the delegation of primary legislative power, but rather involves the delegation of administrative authority to adopt certain provisions relating to the "taking of mullet."
The indictments charge these defendants with failing to report their monthly catch of mullet. Clearly, the Legislature could have delegated to the Commission the authority to adopt rules regulating the reporting of mullet catches. The critical issue is whether the Commission exceeded its delegated authority under Section 333 A by adopting reporting requirements, especially when the requirements are punishable in a criminal proceeding by a life-time prohibition against earning a living by fishing mullet.
The State argues that the reporting regulation was promulgated pursuant to the "other provisions" phrase of La.Rev.Stat. 56:333 A. According to the State, Section 333 G requires the Commission to report information on mullet annually to the Legislature and the information required by the Commission's administrative rule is necessary for the Commission's annual report.
The general words following the specific powers enumerated in Section 333 A must be construed to apply to powers of the same nature as those enumerated. In our view, the Legislature in Section 333 A intended for the Commission only to adopt rules (the violation of which is punishable by permanent loss of a mullet permit) which involved the taking of mullet.
The statutory definition of "taking" does not relate in any manner to the reporting of catches, but refers to the manner in which mullet are harvested.[9] The legislative authorization enabling the Commission to promulgate rules was limited to conduct which constitutes a "taking of mullet," i.e., the methods employed by fishermen to capture the fish. The trial court presumably found that there was no connection between the "taking of mullet" and the regulation enacted by the Commission, which requires commercial mullet fishermen, under a criminal penalty, to file monthly reports pertaining to their harvest.[10]
We conclude that the Commission exceeded its authority by adopting La. Adm. Code tit. 76, Part VII, § 343, which criminalizes the commercial mullet fishermen's failure to report their catch. The conduct criminalized by the administrative rule does not fall within the statutory definition of "taking."
*163 Moreover, the legislative silence in La. Rev.Stat. 56:333 A regarding delegation of authority to adopt regulations on reporting of catches of mullet, when considered with La.Rev.Stat. 56:345's requirement for fishermen (under a much less harsh criminal penalty) to report all sales of fish to resident wholesale or retailers, supports the conclusion that the Legislature did not intend to authorize the Commission to adopt reporting requirements with drastic criminal penalties.
We further conclude that the challenged administrative rule fails the third prong of the Schwegmann test. The delegation in La.Rev.Stat. 56:333 A lacks adequate procedural safeguards to protect against an abuse of discretion by the Commission. In fact, the statute makes no mention of any guidelines for the Commission to follow when promulgating regulations. Although the State contends that the Commission enacted the instant regulation after a public hearing in accordance with the Administrative Procedures Act (APA), La.Rev.Stat. 49:950-971, this hearing was not mandated by Section 333 A. Unlike the enabling provision upheld in State v. All Pro Paint and Body Shop, Inc., supra at pp. 19-20, 639 So.2d at 720, Section 333 A neither refers to the APA nor prescribes any procedures to allow for legislative review.
The trial court correctly held that the Commission, in adopting the reporting requirement in La. Adm.Code tit. 76, Part VII, § 343(E)(5), improperly exceeded its statutory authority. The administrative regulation is therefore unconstitutional and cannot be used as a basis for the offenses charged in these proceedings.
Because this court holds that the administrative regulation is unconstitutional, it is unnecessary to address the other bases under which the trial court quashed the criminal charges against these defendants.

Decree
The judgment of the district court declaring La. Adm.Code tit. 76, Part VII, § 343(E)(5) unconstitutional and granting the motion to quash the charges against all defendants is affirmed.

ON REHEARING
PER CURIAM.[*]
This court, on its own motion, has reconsidered the decree in the judgment rendered on November 23, 1999. In that judgment, this court affirmed the portion of the judgment of the trial court that granted defendants' motion to quash on the basis that the Wildlife and Fisheries Commission exceeded its authority under La.Rev.Stat. 56:333 in adopting La.Adm. Code tit. 76, Part VII, § 343(E)(5) (1995). However, since this court did not address the issue of the constitutionality of La.Rev. Stat. 56:333, which the trial court had declared unconstitutional in part, that declaration arguably still remains in effect.
Accordingly, rehearing is granted in part, and the decree is amended to read:
The portion of the judgment of the district court declaring La.Adm.Code tit. 76, Part VII, § 343E5 (1995) unconstitutional is affirmed; the portion of the judgment of the district court declaring a portion of La.Rev.Stat. 56:333 unconstitutional is vacated as unnecessary.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] The record on appeal, as originally filed in this court, did not contain either the judgment of the trial court or the reasons for judgment. (The trial judge rendered oral reasons, but the court reporter's equipment malfunctioned during the proceedings, making it impossible to transcribe most of the testimony and argument, as well as the reasons for judgment.) The official minutes stated that the court "finds that La. R.S. 56:333 A is unconstitutional for the reasons set forth in Mr. Mumphrey's brief." After oral argument in this court, the parties supplemented the record with a written judgment granting the motion to quash and "finding that La. R.S. 56:333(F) and LAC 76.VII.343(E)(5) are invalid as unconstitutional." (emphasis added).
[2] The record in this case is sparse, but the factual recitation is based on the information contained therein and on information supplied by the Attorney General in his brief.
[3] The affidavits also referred to a specific number of pounds of mullet for each separate defendant.
[4] La.Rev.Stat. 56:333 B, which is specifically excepted from Section A, fixes the season and hours for taking mullet, subject to quotas and size limits established by law and by Commission regulation; specifies the sole method for taking mullet; and requires a special permit for the commercial taking of mullet and sets the permit fee. La.Rev.Stat. 56:333 D establishes the requirement that a person must have had a commercial saltwater gill net license in two of the three years immediately preceding the enactment of the Section and must have derived more than fifty percent of his earned income in those years from the capture and sale of seafood.
[5] Because the resident wholesale and retail dealers are separately required by La.Rev. Stat. 56:345 A to report purchases of fish, the combination of reporting requirements ensured that all sales of all fish are accounted for. When La. Admin. Code tit. 76, Part VII, § 343(E)(5) (1975) was adopted for mullet fishermen, there apparently was no corresponding requirement for wholesale and retail dealers.
[6] The trial court clearly declared unconstitutional the administrative rule that the defendants are charged with violating. While there was a great deal of argument about the constitutionality of La.Rev.Stat. 56:333 A, it is not necessary to reach that issue in this decision, because the crucial question is whether the Commission, in adopting the administrative rule, went beyond its authority under La.Rev. Stat. 56:333 A.
[7] La. Const. art. II, § 1 provides:

The powers of government of the state are divided into three separate branches: legislative, executive, and judicial.
La. Const. art. II, § 2 provides:
Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.
[8] La.Rev.Stat. 14:7 provides:

A crime is that conduct which is defined as criminal in this Code, or in other acts of the legislature, or in the constitution of this state.
[9] La.Rev.Stat. 56:8(95)defines "take" as "the attempt or act of hooking, pursuing, netting, capturing, snaring, trapping, shooting, hunting, wounding, or killing by any means or device."
[10] The broad interpretation of the "other provisions" phrase of Section 333 A advocated by the State also runs afoul of the requirement of the second prong of the Schwegmann test that the stated policy provide the Commission with a discernible standard to guide it in the execution of its duty.
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.