GUIDRY, J.
Defendants, Louisiana Workforce Commission, the Louisiana Office of Workers' Compensation Administration (OWC), Christopher Rich, M.D., Wes Hataway, and Curt Eysink, appeal from a judgment permanently enjoining, restraining, and prohibiting them from applying and/or enforcing certain statutory provisions and regulations regarding the medical treatment schedule authorization and dispute resolution procedures. For the reasons that follow, we affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
In 2009, the Louisiana Legislature enacted La. R.S. 23:1203.1, which completely revised the workers' compensation system for injured workers to obtain medical treatment. The revision was a product of the combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. Church Mutual Insurance Company v. Dardar, 13-2351, p. 5 (La. 5/7/14), 145 So.3d 271, 275.
As such, medical care, services, and treatment due pursuant to La. R.S. 23:1203.1 by the employer to the employee are now governed by a medical treatment schedule. La. R.S. 23:1203.1(1). Louisiana Revised Statute 23:1203.1(B) instructs the Director of the OWC (Director) to "promulgate rules in accordance with the Administrative Procedure Act, R.S. 49:950 et seq., to establish a medical treatment schedule." To this end, the Director is tasked with appointing a medical advisory council, to be comprised of a medical director and at least one representative from eight enumerated areas of medical practice. La. R.S. 23:1203.1(F). The council, with the assistance of the medical director, is directed to develop guidelines to be established and promulgated as the medical treatment schedule. La. R.S. 23:1203.1(E) and (G). These guidelines must meet specific criteria outlined in the statute. La. R.S. 23:1203.1(E) and (G)(1). Once the medical treatment schedule is promulgated, the Director and the medical advisory council are charged with reviewing and updating the schedule no less often than once every two years. La. R.S. 23:1203.1(H).
*375 Church Mutual Insurance Company, 13-2351 at p. 6, 145 So.3d at 276-277.
The medical treatment schedule was subsequently promulgated and became effective in June 2011. See LR 37:1631; LAC 40:I.2001, et seq.
Thereafter, on April 29, 2013, plaintiffs, consisting of injured workers, attorneys practicing in the area of workers' compensation, and physicians who treat injured workers, filed a petition for declaratory and injunctive relief challenging the constitutionality of certain provisions of La. R.S. 23:1203.1 and its implementing regulations found at LAC 40:I.2715, La. R.S. 23:1314(E), and certain provisions of La. R.S. 23:1020.1. Defendants responded by filing exceptions raising the objections of no cause of action, no right of action, prematurity, and vagueness or ambiguity. Particularly, with regard to their exception raising the objection of no right of action, the defendants asserted that plaintiffs, Janice Hebert Barber, Jennifer Barber Valois, John H. Fairbanks, M.D., John H. Logan, M.D., and Pierce D. Nunley, M.D., failed to allege that their own constitutional rights had been affected as a result of the challenged statutes and regulations.[1]
Plaintiffs subsequently filed a motion for preliminary injunction, which was set for hearing. Pamela Vicknair, an injured worker, filed a petition of intervention, adopting the petition for declaratory judgment and injunctive relief, motion for preliminary injunction, and memoranda filed by the plaintiffs, which the trial court granted. Following a hearing on the preliminary injunction request, wherein the trial court also took up defendants' exceptions, the trial court issued a ruling on June 24, 2015, sustaining the defendants' exception raising the objection of no cause of action as to Janice Hebert Barber, Jennifer Barber Valois, John H. Fairbanks, M.D., John H. Logan, M.D., and Pierce D. Nunley, M.D., finding that they lacked standing to challenge the constitutionality of the statutes and regulations at issue. The trial court further expressed the opinion that: LAC 40:I.2715(E)(1)(e)(2)(a) and LAC 40:I.2715(H) are unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Louisiana Constitution Article I, Section 2 ; LAC 40:I.2715(L) is unconstitutionally vague and violates the Due Process Clauses of the Federal and State Constitutions; the statutory and administrative system is unconstitutional as the system violates both substantive and procedural due process; and the workers' compensation system implemented by the OWC unconstitutionally violates the separation of powers doctrine.
Thereafter, the trial court signed a judgment sustaining the defendants' exception of no right of action as to Janice Hebert Barber, Jennifer Barber Valois, John H. Fairbanks, M.D., John H. Logan, M.D., and Pierce D. Nunley, M.D., and dismissed their claims. The trial court, however, overruled the exception as to the remaining plaintiffs. The trial court also found that the remaining plaintiffs had made a prima facie showing that they are entitled to the relief sought as a matter of law and that they will likely prevail on the merits of the case. As such, the trial court granted plaintiffs' motion for preliminary injunction and ordered that the defendants be *376 enjoined from applying and/or enforcing LAC 40:I.2715(E)(2) ; LAC 40:I.2715(H) ; and LAC 40:I.2715(L). The trial court also ordered that the defendants be enjoined from applying and/or enforcing statutes and regulations, which establish the system for the administrative determinations of Form 1009 claims for medical benefits for injured workers by a medical director employed by the OWC of the Louisiana Workforce Commission and administrative appeals therefrom to OWC judges, including: La. R.S. 23:1203.1(J)(1), (K), and (M) ; La. R.S. 23:1314(D) and (E)(1), inclusive; LAC 40:I.2715(B)(3)(d), (e), and (f) ; and LAC 40:I.2715(E)(2), (F), (H), (I), (J), (K), and (L).
Defendants filed a motion for suspensive appeal to the Louisiana Supreme Court, invoking the supreme court's appellate jurisdiction pursuant to La. Const. art. V, § 5 (D) on the ground that the trial court declared certain provisions of the medical treatment schedule contained in the Louisiana Workers' Compensation Act to be unconstitutional. In Barber v. Louisiana Workforce Commission, 15-1700, p. 1 (La. 10/9/15), 176 So.3d 398, 398 (Barber I), the supreme court found the constitutional issue was not properly raised in the trial court, since a court may not declare a statute unconstitutional in the context of a summary proceeding such as a preliminary injunction hearing. Furthermore, the court noted that although the trial court's ruling, which was purportedly incorporated by reference in the judgment, discusses unconstitutionality, the judgment itself does not contain any formal declaration of unconstitutionality. Barber I, 15-1700 at p. 2 n.1, 176 So.3d at 399 n.1. Accordingly, because it lacked appellate jurisdiction over the case, the supreme court transferred the appeal to this court for review of the judgment granting the preliminary injunction. Barber I, 15-1700 at p. 2, 176 So.3d at 399.
On appeal, this court reversed the portion of the trial court's judgment granting a preliminary injunction in favor of plaintiffs, finding that because plaintiffs did not seek to maintain the status quo but rather, sought a change in the workers' compensation system, a preliminary injunction was not appropriate. However, this court affirmed the portion of the trial court's judgment sustaining defendants' exception raising the objection of no right of action as to Janice Hebert Barber, Jennifer Barber Valois, John H. Fairbanks, M.D., John H. Logan, M.D., and Pierce D. Nunley, M.D., finding that these lawyer and doctor plaintiffs lacked standing to challenge the constitutionality of the subject statutes and regulations and remanded the matter to the trial court for a trial on the merits of the remaining plaintiffs' request for a permanent injunction and declaratory judgment. Barber v. Louisiana Workforce Commission, 15-1598, p. 8 and 11 (La. App. 1st Cir. 6/2/16) (unpublished opinion) ( Barber II ).
At the trial on the merits of plaintiffs' request for a permanent injunction and declaratory judgment, the parties admitted into evidence the testimony and evidence from the preliminary injunction as well as the testimony of Michelle Keller, the current Director of OWC. Following the trial, the trial court signed a judgment on March 2, 2017, permanently enjoining, restraining, and prohibiting defendants from applying and/or enforcing 40 LAC § 2715(E)(2), 40 LAC § 2715(H), 40 LAC § 2715(L), and the statutes and regulations establishing the system for the administrative determinations of form 1009 claims for medical benefits for injured workers by a medical director employed by the OWC and administrative appeals therefrom to the OWC judges, including: La. R.S. 23:1203.1(J)(1), (K), (M) ; La. R.S. 23:1314(D) and (E)(1) inclusive; 40 LAC
*377 § 2715(B)(3), (d), (e), (f); and 40 LAC § 2715 (E)(2), (F), (H), (I), (J), (K) and (L). The trial court also permanently enjoined, restrained, and prohibited the defendants from allowing anyone to attempt to communicate with judges of the OWC regarding pending workers' compensations claims by using any employee of the Louisiana Workforce Commission or OWC as an intermediary. The trial court further ordered the defendants to take all action necessary to ensure that all OWC judges and their staff are insulated from influence from any sources other than the facts and law presented to them on the record; that defendants take all action necessary to ensure that any appearance of improper influence with respect to OWC judges is eradicated in its entirety to the fullest extent possible; and that defendants will refrain from engaging in any off the record communication with party litigants or representatives of party litigants on matters concerning pending workers' compensation claims, unless counsel for the parties are present.
Defendants now appeal from the trial court's judgment.[2]
DISCUSSION
Standard of Review
The issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence. Orleans Parish School Board v. Pastorek, 12-1174, p. 3 (La. App. 1st Cir. 8/14/13), 122 So.3d 1106, 1108, writ denied, 13-2207 (La. 3/21/14), 135 So.3d 617. An appellate court reviews the granting of a permanent injunction under the manifest error standard of review. Mary Moe, LLC v. Louisiana Board of Ethics, 03-2220, p. 9 (La. 4/14/04), 875 So.2d 22, 29.
Under La. C.C.P. art. 3601, "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." However, a petitioner is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. Jurisich v. Jenkins, 99-0076, p. 4 (La. 10/19/99), 749 So.2d 597, 599.
In the instant case, plaintiffs sought a permanent injunction, asserting that certain provisions of La. R.S. 23:1203.1 and its implementing regulations found at LAC 40:I.2715 and certain provisions of La. R.S. 23:1020.1 and 23:1314 are unconstitutional. As such, in reviewing whether the trial court erred in granting plaintiffs' request for injunctive relief, we must first review, de novo, plaintiffs' claims that the contested statutory provisions and regulations are unconstitutional. See Johnson v. Motiva Enterprises, LLC, 13-305, p. 7 (La. App. 5th Cir. 10/30/13), 128 So.3d 483, 488, writ denied, 13-2791 (La. 2/14/14), 132 So.3d 966.
Standing
One of the threshold issues that must be decided by a court before it may consider a constitutional challenge to a *378 legal provision is whether the person challenging the provision has standing. State v. Mercadel, 03-3015, pp. 7-8 (La. 5/25/04), 874 So.2d 829, 834. The supreme court has explained that "a party has standing to argue that a statute violates the constitution only where the statute seriously affects the party's own rights." In re Melancon, 05-1702, p. 8 (La. 7/10/06), 935 So.2d 661, 667. To have standing, a party must complain of a constitutional defect in the application of the statute to him or herself, not of a defect in its application to third parties in hypothetical situations. Greater New Orleans, Expressway Commission v. Olivier, 04-2147, p. 4 (La. 1/19/05), 892 So.2d 570, 574. The predicate requirement of standing is satisfied if it can be said that the plaintiff has an interest at stake in the litigation that can be legally protected. In re Melancon, 05-1702 at p. 9, 935 So.2d at 668.
Two of the remaining plaintiffs in this litigation, Peggy Edwards and Darrell Cormier, are injured workers who requested medical treatment pursuant to the medical treatment guidelines. In their affidavits, both plaintiffs stated that they made several requests for treatment, which were denied by the insurer and/or third party administrator. Both plaintiffs subsequently sought review by the medical director, which was also denied. Furthermore, while Cormier ultimately received treatment after a favorable judgment from the OWC judge and settled his workers compensation case in December 2013, Edwards did not receive any of her requested medical treatment. Rather, her judicial review before the OWC was denied, and the judge ordered a neurosurgical independent medical exam (IME) to assess Edwards' condition.
Accordingly, from our review of the record, we find that plaintiffs have established that Edwards has standing to bring this suit, as her right to receive medical treatment for her work related injury has been seriously affected by the statutory provisions and regulations at issue.[3]
Workers Compensation Law-Procedure
Louisiana Revised Statutes 23:1203.1 was enacted with the express intent that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees. La. R.S. 23:1203.1(L).
After the promulgation of the medical treatment schedule, notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to La. R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. La. R.S. 23:1203.1(1). All requests by a medical provider for authorization of care beyond the statutory non-emergency monetary limit of $750 are presented to the carrier/self-insured employer on form LWC-WC-1010, along with history, physical findings/clinical tests, functional improvements from prior treatment, test/imaging results, and treatment plan. LAC 40:I.2715(C)(1) and (D)(1). After a medical provider has submitted to the payor the request for authorization *379 and required information, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. La. R.S. 23:1203.1(J)(1). A carrier/self-insured employer who fails to return LWC-WC-1010 within five business days is deemed to have denied such request for authorization. LAC 40:I.2715(E)(2)(a) and (H).
Any aggrieved party who disagrees with a request for authorization that is denied, deemed denied, or approved with modification, or who seeks a determination from the medical director with respect to medical care, services, and treatment that varies from the medical treatment schedule shall file a request for review by the medical director on form LWC-WC-1009 with the OWC within fifteen calendar days of receipt of the LWC-WC-1010 indicating that care has been denied or approved with modification or expiration of the fifth business day without response by the carrier/self-insured employer. LAC 40:I.2715(B)(3)(d) and (e); 40:I.2715(J)(1) ; see also La. R.S. 23:1203.1(J)(1). The medical director shall render a decision as soon as practicable, but in no event later than thirty calendar days from the date of filing. La. R.S. 23:1203.1 (J)(1) ; LAC 40:I.2715(B)(3)(e) and (J)(5)(b).
Thereafter, if a party is aggrieved by the determination of the medical director, he shall seek judicial review by filing a form LWC-WC-1008 in a workers' compensation district office within fifteen calendar days of the date said determination is mailed to the parties. LAC 40:I.2715(B)(3)(f) and (K) ; La. R.S. 23:1203.1(K). Upon receipt of the appeal, the OWC judge shall immediately set the matter for an expedited hearing to be held not less than fifteen calendar days nor more than thirty calendar days after the receipt of the appeal by the office and shall provide notice of the hearing date to both parties. The decision of the medical director may only be overturned when it is shown by clear and convincing evidence that the decision was not in accordance with the provisions of La. R.S. 23:1203.1. LAC 40:I.2715(K) ; La. R.S. 23:1203.1(K).
Tacit Denial Provisions- LAC 40:I.2715(E)(2) and (H)
Defendants first assert that the trial court erred in finding that the plaintiffs proved by a preponderance of the evidence that the regulations providing for automatic tacit denial of requests for authorization of treatment are unconstitutional and in enjoining, restraining, and prohibiting defendants from applying and or enforcing LAC 40:I.2715(E)(2) and (H).
Louisiana Administrative Code, Title 40, Part I § 2715(E)(2) provides:
a. A carrier/self-insured employer who fails to return LWC-WC-1010 within five business days as provided in this Subsection is deemed to have denied such request for authorization. A health care provider, claimant, or claimant's attorney if represented who chooses to appeal a denial pursuant to this Subsection shall file a LWC-WC-1009 pursuant to Subsection J of this Section.
b. A request for authorization that is deemed denied pursuant to this Subparagraph may be approved by the carrier/self-insured employer within 10 calendar days of being deemed denied. The approval will be indicated in section 3 of LWC-WC-1010. The medical director shall dismiss any appeal that may have been filed by a LWC-WC-1009. The carrier/self-insured employer shall be given a presumption of good faith regarding the decision to change the denial to an approval provided that the LWC-WC-1010 which indicates "approved" in section 3 is faxed or emailed within 10 calendar days.
Additionally, LAC 40:I.2715(H) provides:
*380 [A] carrier/self-insured employer who fails to return LWC-WC-1010 with section 3 completed within the five business days to act on a request for authorization as provided in his Section is deemed to have denied such request for authorization. A health care provider, claimant, or claimant's attorney if represented who chooses to appeal a denial pursuant to this Subparagraph shall file a LWC-WC-1009 pursuant to Subsection J of this Section.
At the trial on the plaintiffs' request for a permanent injunction, the plaintiffs asserted that the foregoing regulations violate the separation of powers provision of the Louisiana Constitution, Article II Section 2. The Louisiana Constitution unequivocally mandates the separation of powers among the three branches of government; however, the supreme court has recognized that "although the legislature may not delegate primary legislative power, it may declare its will and, after fixing a primary standard, may confer upon administrative officers in the executive branch the power to 'fill up the details' by prescribing administrative rules and regulations." State v. Alfonso, 99-1546, p. 7 (La. 11/23/99), 753 So.2d 156, 161 ; see also Arrant v. Wayne Acree PLS, Inc., 15-0905, p. 6 (La. 1/27/16), 187 So.3d 417, 421. Thus, the legislature may delegate to administrative boards and agencies of the state the power to ascertain and determine the facts upon which the laws are to be applied and enforced. State v. All Pro Paint & Body Shop, Inc., 93-1316, p. 6 (La. 7/5/94), 639 So.2d 707, 711-12. Significantly in this case, even when the legislature has properly delegated to an agency certain administrative or ministerial authority, the regulations promulgated by the agency may not exceed the authorization delegated by the legislature. Alfonso, 99-1546 at p. 8, 753 So.2d at 162. An agency exercising delegated authority is not free to pursue any and all ends but can assert authority only over those ends that are connected with the task delegated by the legislative body. Alfonso, 99-1546 at p. 9, 753 So.2d at 162.
Accordingly, a regulation can be struck down as unconstitutional when the regulation exceeded the authority delegated to the administrative body by the legislature or it exceeded the scope of the statute under which it was promulgated, as evidenced by a construction that is contrary to the statute's purpose. Coastal Drilling Company, LLC v. Dufrene, 15-1793, p. 7 (La. 3/15/16), 198 So.3d 108, 115.
Louisiana Revised Statutes 23:1291 creates the OWC and delegates to its Director various enumerated powers. Arrant, 15-0905 at p. 7, 187 So.3d at 422. Particularly, La. R.S. 23:1291(B)(5) provides that the Director shall have the power to "establish and promulgate in accordance with the Administrative Procedure Act such rules and regulations governing the administration of this Chapter and the operation of the office as may be deemed necessary and which are not inconsistent with the laws of this state."[4] As such, La. R.S. 23:1291(B)(5) delegates to the Director general authority to promulgate rules and regulations governing administration of the workers compensation law.
Louisiana Revised Statutes 23:1203.1 (J)(1) provides that "[a]fter a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall *381 notify the medical provider of their action on the request within five business days of receipt of the request." As acknowledged by the parties, the five day provision, which was also present in the prior law, does not provide for what happens if a provider fails to respond within the five-day period. At the hearing on the preliminary injunction, which evidence was also admitted at the trial of the permanent injunction, Wes Hataway, former Director of the OWC, testified that under the old system, if a claimant did not get a response from the payor, it was treated as a denial. According to Mr. Hataway, it may have taken up to sixty days, but ultimately, the claimant proceeded as if the request was denied.
As noted by the plaintiffs, the workers' compensation law creates an affirmative duty to provide all reasonable and necessary medical treatment and provides that such treatment shall be delivered in an efficient and timely manner. See La. R.S. 23:1203.1(L) and Church Mutual Insurance Company, 13-2351 at p. 5, 145 So.3d at 276. The promulgation of LAC 40:I.2715(E)(2) and (H) by the director is not only pursuant to the authority granted to him by the legislature in La. R.S. 23:1291(B)(5), but also is in furtherance of the objective of providing reasonable and necessary medical treatment in an efficient and timely manner. Jennifer Valois, an attorney who practices workers' compensation law, testified that before the revision, it could take six months to get a hearing before an OWC judge to have him determine the medical necessity of medical treatment. By promulgating a regulation that treats a non-response as a tacit denial after expiration of the five-day period, the claimant is able to quickly pursue review before the medical director and if still dissatisfied, with the OWC judge, rather than waiting indefinite periods of time to seek review of their request for authorization of treatment pursuant to the medical treatment schedule.
Accordingly, from our review of the record, we find that the plaintiffs failed to establish that the OWC exceeded its legislative authority by promulgating LAC 40:I.2715(E)(2) and (H), and as such, failed to establish that LAC 40:I.2715(E)(2) and (H) violate the separation of powers provisions of Louisiana Constitution Article II, § 2.
Plaintiffs also asserted that LAC 40:I.2715(E)(2) and (H) violate their substantive due process rights.[5] Under the Fourteenth Amendment to the United States Constitution and La. Const. Art. I, § 2 of the Louisiana Constitution of 1974, a person is protected against deprivation of his life, liberty, and property without due process of law. Fields v. State, Department of Public Safety and Corrections, 98-0611, p. 6 (La. 7/8/98), 714 So.2d 1244, 1250. Due process encompasses both substantive and procedural aspects. Oliver v. Orleans Parish School Board, 14-0329, 14-0330, pp. 34-35 (La. 10/31/14), 156 So.3d 596, 619. Substantive due process may be broadly defined as the constitutional guaranty that no person shall be arbitrarily deprived of his life, liberty, or property. Boudreaux v. Larpenter, 11-0410, p. 13 (La. App. 1st Cir. 6/1/12), 110 So.3d 159, 170. The essence of substantive due process is protection from arbitrary and unreasonable action. Boudreaux, 11-0410 at p. 13, 110 So.3d at 170.
*382 In order to prove a violation of substantive due process, the plaintiffs must first establish the existence of a constitutionally protected property or liberty interest. Boudreaux, 11-0410 at p. 13, 110 So.3d at 170. To have a property interest protected by due process, a person must clearly have more than an abstract need or desire for the property. He must have a legitimate entitlement to it, not merely a unilateral expectation. Carter v. State, Crime Victims Reparation Board and Fund, 03-2728, p. 3 (La. App. 1st Cir. 10/29/04), 897 So.2d 149, 151, writ not considered, 04-2933 (La. 2/4/05), 893 So.2d 883.
In the instant case, plaintiffs asserted that they have a property interest in their claim for workers' compensation benefits, i.e., they have a property right in their claims for medical care once the need for the care has arisen, the treating physician has recommended the specific medical care, and the injured worker or his physician has filed a formal 1009 claim seeking medical director approval. In discussing the issue of state-created claims and property interests for purposes of due process, the Supreme Court has stated that when a claimant has a right to use adjudicatory procedures he "has more than an abstract desire or interest in redressing his grievance: his right to redress is guaranteed by the State." Logan v. Zimmerman Brush Company, 455 U.S. 422, 431, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982). Furthermore, though not directly addressing this issue, the Supreme Court has indicated that a claim for payment of workers' compensation benefits, as distinct from the payments themselves, could constitute a property interest for purposes of due process. See American Manufacturers Mutual Insurance Company v. Sullivan, 526 U.S. 40, 61 n.13, 119 S.Ct. 977, 990 n.13, 143 L.Ed.2d 130 (1999).
Accordingly, from our review of the relevant jurisprudence, and considering that Louisiana has long recognized that causes of action are vested property rights, see Church Mutual Insurance Company, 13-2351 at p. 13, 145 So.3d at 281, we find that plaintiffs have established a property interest in their claim for workers compensation benefits for purposes of due process.
Once that interest has been established, a violation of substantive due process still requires arbitrary and capricious conduct by the governing authority. Boudreaux, 11-0410 at p. 13, 110 So.3d at 170. Legislation offends substantive due process if the government action is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Louisiana Seafood Management Council v. Louisiana Wildlife and Fisheries Commission, 97-1344, p. 18 (La. App. 1st Cir. 9/1/98), 719 So.2d 119, 130, writ denied, 98-2944 (La. 1/29/99), 736 So.2d 832, cert denied, 528 U.S. 868, 120 S.Ct. 166, 145 L.Ed.2d 141 (1999). In other words, government action comports with substantive due process if the action is rationally related to a legitimate government interest. Louisiana Seafood Management Council, 97-1344 at p. 18, 719 So.2d at 130.
Plaintiffs asserted that the tacit denial provisions do nothing to ensure that a correct decision is made or that medical care is provided in an efficient and timely manner, and therefore, these provisions are arbitrary and capricious. However, at the trial, the defendants presented the testimony of Mr. Hataway, who testified as to the OWC's rationale for the tacit denial provisions. According to Mr. Hataway, there are three rationales for these provisions, which were considered by the task force and advisory council prior to implementing these provisions. First, tacit denial *383 is consistent with the practice under the previous workers' compensation system, where a failure to respond to a request for authorization of treatment was considered as a denial. Second, tacit denial, as opposed to tacit approval, ensures that doctors do not administer care that could ultimately be determined to be medically unnecessary. Likewise, the tacit denial provisions guarantee that a medical provider, if he provides medically necessary treatment, will be compensated for his services. Therefore, defendants contend that the tacit denial provisions are rationally related to the legitimate government interest of protecting injured workers from undergoing medically unnecessary treatment and doctors from rendering services without compensation.
From our review of the record, we find that plaintiffs have failed to establish that the tacit denial provisions are not rationally related to a legitimate government interest. Accordingly, we find that plaintiffs have failed to establish that the tacit denial provisions are unconstitutional, and therefore, the trial court erred in issuing a permanent injunction, prohibiting defendants from applying and/or enforcing LAC 40:I.2715(E)(2) and (H).
Request for Variances- LAC 40:I.2715(L)
Defendants next assert that the trial court erred in finding that the plaintiffs proved by a preponderance of the evidence that the regulation providing for obtaining a variance to the medical treatment schedule is unconstitutional and in enjoining, restraining, and prohibiting defendants from applying and or enforcing LAC 40:I.2715(L).
Louisiana Revised Statute 23:1203.1(1) provides, in pertinent part:
[m]edical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.
Furthermore, LAC 40:I.2715(L) provides:
1. Requests for authorization of medical care, services, and treatment that may vary from the medical treatment schedule must follow the same prior authorization process established for all other requests for medical care, services, and treatment that require prior authorization. If a request is denied or approved with modification, and the health care provider or claimant determines to seek a variance from the medical director, then a LWC-WC-1009 shall be filed as provided in Subsection J of this Section. The health care provider, claimant, or claimant's attorney filing the LWC-WC-1009 shall submit with such form the scientific medical literature that is higher ranking and more current than the scientific medical literature contained in the medical treatment schedule, and which supports approval of the variance.
2. A variance exists in the following situations:
a. The requested care, services, or treatment is not recommended by the medical treatment schedule although the diagnosis is covered by the medical treatment schedule.
b. The requested care, services, or treatment is recommended by the medical treatment schedule, but for a different diagnosis or body part.
*384 c. The requested care, services, or treatment involves a medical condition of the claimant that complicates recovery of the claimant that is not addressed by the medical treatment schedule.
At the trial of plaintiffs' request for a permanent injunction, the plaintiffs asserted that LAC 40:I.2715(L) violates the due process clause of the federal and state constitutions because it is impermissibly vague. According to plaintiffs, an ordinary person, i.e., a claimant, does not understand what is meant by "higher ranking" medical literature, and as such, LAC 40:I.2715(L) sets an impossible burden for the injured worker to satisfy. Furthermore, plaintiffs asserted that LAC 40:I.2715(L) also violates the separation of powers provision of the Louisiana Constitution, Article II, Section 2, because it exceeds the authority delegated to OWC by imposing an extremely high and unrealistic burden of proof on the injured worker, which is more onerous than the simple preponderance of the evidence standard articulated in La. R.S. 23:1203.1(1).
A law is fatally vague and offends due process when a person of ordinary intelligence does not have a reasonable opportunity to know what is prohibited so that he may act accordingly or if the law does not provide a standard to prevent arbitrary and discriminatory application. Louisiana Chemical Association v. State through Louisiana Department of Revenue, 16-0501, p. 13 (La. App. 1st Cir. 4/7/17), 217 So.3d 455, 464, writ denied, 17-0761 (La. 9/22/17), 227 So.3d 826. Civil statutes are held to a lesser standard of definiteness than statutes imposing criminal penalties. See Med Express Ambulance Service, Inc. v. Evangeline Parish Police Jury, 96-0543, p. 11 (La. 11/25/96), 684 So.2d 359, 367. Furthermore, a regulation is not vague because it may at times be difficult to prove, but rather because it is unclear as to what must be proved. See F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253, 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012).
At the trial of the permanent injunction, plaintiffs submitted the testimony of former medical director Dr. Christopher Rich. Dr. Rich acknowledged that the term "higher ranking" medical literature is not specifically defined in either La. R.S. 23:1203.1 or the regulations implementing that statute. However, Dr. Rich stated that the majority of published medical literature has a specified level of evidence attached to it, which can be readily located either in the abstract or at the end of the article, and that the classification of level is fairly well accepted. Dr. Rich went on to explain that the levels of evidence are defined in the medical treatment schedule, describing the different levels and types and giving a very brief description of what that would mean. Dr. Rich acknowledged that provider input is probably necessary for a claimant or claimant attorney to understand the rankings, but that a health care provider would know how and where to find articles and level of evidence.
Plaintiffs also submitted the testimony of Ms. Valois who acknowledged that while the term "higher ranking" scientific medical evidence is not defined in the statute, there is a small section in the medical treatment schedule describing the different levels. She also testified as to the difficulty and burden involved in locating higher ranking scientific evidence, stating that she is not entirely aware of the different levels of medical literature, but that she is attempting to meet her burden as best as she can. Furthermore, Ms. Valois stated that in her experience, the doctors whom she deals with do not know how to request a variance.
*385 From our review of the record, we find that plaintiffs have failed to establish that LAC 40:I.2715(L) is unconstitutionally vague. The regulation refers to "higher ranking" scientific medical literature. According to the testimony of both Dr. Rich and Ms. Valois, the different levels of medical literature are described in the medical treatment schedule. Furthermore, while the process of locating higher ranking scientific medical literature may be difficult, it is not unclear as to what must be proved. See F.C.C., 567 U.S. at 253, 132 S.Ct. at 2317.
Furthermore, we find that plaintiffs have failed to establish that the enactment of LAC 40:I.2715(L) violates the separation of powers. Plaintiffs asserted that LAC 40:I.2715(L) sets forth a higher burden of proof than the lesser preponderance of the evidence burden articulated in La. R.S. 23:1203.1(1) and therefore, OWC exceeded the authority granted to it by the legislature in enacting the provision. However, from our review of the statutory provision and the regulation, we find that the burden of proof in seeking a variance remains a preponderance of the scientific medical evidence, and LAC 40:I.2715(L) merely addresses the type of evidence needed to meet this burden of proof. Therefore, we do not find that LAC 40:I.2715(L) violates the separation of powers.
Accordingly, because the plaintiffs have failed to establish that LAC 40:I.2715(L) is unconstitutional, we find that the trial court erred in permanently enjoining defendants from applying and/or enforcing this provision.
Non-Covered Treatment- La. R.S. 23:1203.1(M)
Defendants also contend that the trial court erred in enjoining defendants from applying and/or enforcing La. R.S. 23:1203.1(M), which governs treatment that is not covered by the medical treatment schedule. Louisiana Revised Statute 23:1203.1(M) provides:
(1) With regard to all treatment not covered by the medical treatment schedule promulgated in accordance with this Section, all medical care, services, and treatment shall be in accordance with Subsection D of this Section.
(2) Notwithstanding any other provision of this Chapter, all treatment not specified in the medical treatment schedule and not found in Subsection D of this Section shall be due by the employer when it is demonstrated to the medical director, in accordance with the principles of Subsection C of this Section, that a preponderance of the scientific medical evidence supports approval of the treatment that is not covered.
In particular, La. R.S. 23:1203.1(D)(5) provides that "[t]he medical treatment schedule shall be based on guidelines which ... [a]re, by statute or rule, adopted by any other state regarding medical treatment for workers' compensation injuries, diseases, or condition."
Plaintiffs asserted that the incorporation of La. R.S. 23:1203.1(D)(5) in La. R.S. 23:1203.1(M) renders it unconstitutionally vague, because an ordinary person looking at the statute would not know which states have medical treatment guidelines and researching which states have guidelines and what those guidelines are is unduly burdensome. However, from our review of the relevant statutes, we do not find that La. R.S. 23:1203.1(M) is unconstitutionally vague.
Plaintiffs do not argue, and the testimony presented at trial does not establish, that they do not understand what a claimant is required to prove in order to obtain treatment not covered by the medical *386 treatment schedule.[6] Rather, plaintiffs assert, and Ms. Valois testified, that it is difficult to locate other state's guidelines, and therefore, the process of complying with Subsection (M)(1) and its incorporation of Subsection (D)(5) is unduly burdensome. However, a statute is not vague because it may at times be difficult to prove. See F.C.C., 567 U.S. at 253, 132 S.Ct. at 2317. Subsection (M), and its incorporation of (D)(5), sets forth a standard to prevent arbitrary application, and it is clear from the language of this provision what must be proved. See Louisiana Chemical Association, 16-0501 at p. 13, 217 So.3d at 464 ; see also F.C.C., 567 U.S. at 253, 132 S.Ct. at 2317.[7]
Accordingly, because we find that plaintiffs failed to establish that La. R.S. 23:1203.1(M) is unconstitutional, the trial court erred in granting a permanent injunction prohibiting defendants from applying and/or enforcing La. R.S. 23:1203.1(M).
Statutory and Regulatory Appeal Process- La. R.S. 23:1203.1(J)(1), (K) ; La. R.S. 23:1314(D) and (E)(1) ; LAC 40:I.2715(B)(3)(d)-(f), LAC 40:I.2715(F), (H)-(L)
Defendants contend that the plaintiffs failed to establish that the statutory and regulatory provisions detailing the process of appealing a denial of a request for authorization of treatment to the medical director and thereafter to an OWC judge violates the due process clauses of the federal and state constitutions.
Any aggrieved party who disagrees with a request for authorization that is denied, deemed denied, or approved with modification, or who seeks a determination from the medical director with respect to medical care, services, and treatment that varies from the medical treatment schedule shall file a request for review by the medical director on form LWC-WC-1009 with the OWC within fifteen calendar days of receipt of the LWC-WC-1010 indicating that care has been denied or approved with modification or expiration of the fifth business day without response by the carrier/self-insured employer. LAC 40:I.2715(B)(3)(d) and (e); 40:I.2715(J)(1) ; see also La. R.S. 23:1203.1 (J)(1). The request for review shall include the LWC-WC-1009, stating the reason for the request for review; a copy of the LWC-WC-1010, showing the history of communications between the health care provider and the carrier/self-insured employer that resulted in the request being denied or approved with modification; and all of the information previously submitted to the carrier/self-insured employer. LAC 40:I.2715(J)(2). The health care provider or claimant filing the LWC-WC-1009 shall certify that such form and all supporting documentation has been sent to the carrier/self-insured employer, and the OWC shall notify all parties of receipt of a LWC-WC-1009. LAC 40:I.2715(J)(4). Thereafter, the carrier/self-insured employer shall provide to the medical director, within five business days of receipt of the LWC-WC-1009 from the health care provider or the claimant, and with a copy going to the claimant and health care provider or claimant *387 attorney, any evidence that it finds pertinent to the decision regarding the request being denied, approved with modification, deemed denied, or that a variance from the medical treatment schedule is warranted. LAC 40:I.2715(J)(5)(a). The medical director shall render a decision within thirty calendar days from receipt of the LWC-WC-1009 and consideration of any medical evidence from the carrier/self-insured employer, if provided. LAC 40:I.2715(J)(5)(b) ; see also La. R.S. 23:1203.1(J)(1) ; LAC 40:I.2715(B)(3)(e).
Thereafter, if a party is aggrieved by the determination of the medical director, he shall seek judicial review by filing a form LWC-WC-1008 in a workers' compensation district office within fifteen calendar days of the date said determination is mailed to the parties. LAC 40:I.2715(B)(3)(f) and (K) ; La. R.S. 23:1203.1(K). A LWC-WC-1008 shall include a copy of the LWC-WC-1009 and the decision of the medical director. A party filing such appeal must simultaneously notify the other party that an appeal of the medical director's decision has been filed. Upon receipt of the appeal, the workers' compensation judge shall immediately set the matter for an expedited hearing to be held not less than fifteen calendar days nor more than thirty calendar days after the receipt of the appeal by the office and shall provide notice of the hearing date to both parties. The decision of the medical director may only be overturned when it is shown by clear and convincing evidence that the decision was not in accordance with the provisions of La. R.S. 23:1203.1. LAC 40:I.2715(K) ; see also La. R.S. 23:1203.1(K) ; LAC 40:I.2715(B)(3)(f).
In seeking a permanent injunction of the foregoing statutory and regulatory provisions, plaintiffs asserted that these provisions are unconstitutional because they violate notions of procedural and substantive due process. In particular, plaintiffs asserted with regard to procedural due process that an injured worker is not provided an opportunity to be heard at any level, because: (1) there is no procedural mechanism for an injured worker to object to information or documents submitted by the employer or insurance carrier; (2) there is no opportunity at the medical director level for an injured worker to present evidence, examine witnesses, or be informed as to what information or documents have been submitted to the medical director; and (3) the appeal of a medical director's decision to the OWC judge is limited, as it is confined to the record and there is no right to call witnesses or submit evidence, making it impossible for an injured worker to meet his burden of establishing by "clear and convincing evidence" that the medical director's decision was not in accordance with the provisions of La. R.S. 23:1203.1.
The meaning of procedural due process is well settled. Persons whose rights may be affected by state action are entitled to be heard at a meaningful time and in a meaningful manner. Fields, 98-0611 at p. 6, 714 So.2d at 1250 ; see also Matthews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Exactly what process is due is dependent upon the peculiar facts involved. Casse v. Sumrall, 547 So.2d 1381, 1385 (La. App. 1st Cir.), writ denied, 551 So.2d 1322 (La. 1989). Due process is not a technical concept with a fixed content unrelated to time, place, and circumstances. It is a flexible standard, which requires such procedural safeguards as a particular situation demands. Matthews, 424 U.S. at 334, 96 S.Ct. at 902 ; Casse, 547 So.2d at 1385.
In the context of administrative action, the judicial model of an evidentiary hearing is neither required nor even the most effective method of decisionmaking *388 in all circumstances. Matthews, 424 U.S. at 348, 96 S.Ct. at 909. All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities of those who are to be heard to insure that they are given a meaningful opportunity to present their case. Matthews, 424 U.S. at 349, 96 S.Ct. at 909.
The Supreme Court has set forth three factors to be weighed when determining the specific dictates required by due process: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. Matthews, 424 U.S. at 335, 96 S.Ct. at 903 ; see also Delahoussaye v. Board of Supervisors of Community and Technical Colleges, 04-0515, p. 9 (La. App. 1st Cir. 3/24/05), 906 So.2d 646, 651.
In reviewing plaintiffs' procedural due process claim,[8] we find that the private interest affected by the statutory and regulatory provisions at issue is the ability of injured workers to receive medically necessary treatment for work- related injuries. The state's interest is to ensure that health care services are delivered to injured workers in an efficient and timely manner while maintaining the welfare of the workers' compensation industry. See Church Mutual Insurance Company, 13-2351 at p. 19, 145 So.3d at 284 ; Johnson, 13-305 at p. 20, 128 So.3d at 495.
As noted by the supreme court in Church Mutual Insurance Company, 13-2351 at pp. 19-20, 145 So.3d at 284, La. R.S. 23:1203.1 reflects a "rational policy choice by the legislature to confer authority on the Director of the OWC ... to determine in advance the medical necessity for certain medical care, in particular circumstances, in order to avoid case-by-case disputes and variations and to streamline the process."
The review process set forth in the statutory and regulatory provisions at issue sets out in detail the procedures for an injured worker aggrieved by a determination to seek review before the medical director and thereafter, before an OWC judge. As confirmed by Dr. Rich, Ms. Keller, and Ms. Valois in their testimony, review by the medical director is confined to whether the requested medical treatment falls within the guidelines and does not involve an independent evaluation or determination of medical necessity. As such, review is confined to the copy of the LWC-WC-1010, showing the history of communications between the health care provider and the carrier/self-insured employer that resulted in the request being denied or approved with modification and all of the information previously submitted to the carrier/self-insured employer. According to Dr. Rich, any information that he needs to perform his review such as subjective complaints of the claimant, medical history, testing, diagnosis, and prior treatment, are contained within these records. Dr. Rich further stated that he only looks at this *389 clinical data in considering whether the requested treatment falls within the medical treatment schedule, and he does not consider any other information in the record in his determination. Additionally, Ms. Keller stated that at the time of the trial of the permanent injunction, statistics maintained by the OWC indicated that the medical director was approving seventy percent of requests for medical treatment. This figure represents an increase in approvals from previous years.
With regard to maintenance and availability of the record, Ms. Keller stated that when the medical services section receives the LWC-WC-1009 and supporting documentation, it is scanned and the record is stored in the OWC docketing system, called JUSTWARE. Mr. Hataway acknowledged that there is no process for providing parties with copies of an administrative record, but he stated that the regulatory provisions require that both parties notify and copy all other parties on any submissions to the medical director.
Finally, when a claimant seeks judicial review before an OWC judge, the regulations provide that the decision of the medical director may only be overturned when it is shown by clear and convincing evidence that the decision was not in accordance with the provisions of La. R.S. 23:1203.1. La. R.S. 23:1203.1(K) ; LAC 49:I.2715(K). As noted by Ms. Keller and Mr. Hataway, all OWC judges have access to the record stored in the JUSTWARE system. (R. 677; R. 446) And, while there is no formal provision dealing with objections to any evidence that is contained within that record, Ms. Valois stated that she has been permitted at the OWC level to lodge an initial objection.
Additionally, Ms. Keller and Mr. Hataway acknowledged that a claimant's ability to submit additional evidence at the hearing before the OWC judge is dictated by the law as interpreted by the circuit court of appeal in which the LWC-WC-1008 is filed. According to Ms. Keller, OWC judges are constrained to follow the decisions of the appellate courts that oversee their districts, and if the court determines that a record can be supplemented on review of a LWC-WC-1008, the OWC judge must allow the parties to supplement the record. The Louisiana First Circuit Court of Appeal, as well as the Second Circuit, the Third Circuit, and the Fifth Circuit, have permitted parties to supplement the record before an OWC judge. See Thompson v. DHH-Office of Public Health, 15-1032, p. 9 (La. App. 1st Cir. 2/26/16), 191 So.3d 593, 598, writ denied, 16-00716 (La. 6/3/16), 192 So.3d 751 ; Wilson v. Broadmoor, LLC, 14-694, p. 7 (La. App. 5th Cir. 3/11/15), 169 So.3d 463, 467 ; Gilliam v. Brooks Heating & Air Conditioning, 49,161, p. 17 (La. App. 2nd Cir. 7/16/14), 146 So.3d 734, 745 ; Spikes v. Louisiana Commerce & Trade Association, 13-919, p. 7 (La. App. 3rd Cir. 7/2/14), 161 So.3d 755, 760-761.
Accordingly, from our review of the record, we find that while the private interest affected by the statutory and regulatory provisions at issue is substantial, plaintiffs have failed to establish that the statutory and regulatory review system outlined above violates their right to procedural due process. As detailed above, the review process provides claimants with an opportunity to present their claim for review at multiple levels, including the right to a hearing before an OWC judge, where additional evidence may be submitted. Given the procedural protections afforded claimants, the risk of an erroneous deprivation is low. Therefore, we find that plaintiffs have failed to establish that the statutory and regulatory provisions detailing the process of appealing a denial of a request for authorization of treatment to the medical *390 director and thereafter to an OWC judge violates the procedural due process clauses of the federal and state constitutions
Additionally, we find that plaintiffs have failed to establish that these statutory and regulatory provisions violate their right to substantive due process. As previously noted, a violation of substantive due process requires arbitrary and capricious conduct by the governing authority. Boudreaux, 11-0410 at p. 13, 110 So.3d at 170. Legislation offends substantive due process if the government action is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Louisiana Seafood Management Council, 97-1344 at p. 18, 719 So.2d at 130. In other words, government action comports with substantive due process if the action is rationally related to a legitimate government interest. Louisiana Seafood Management Council, 97-1344 at p. 18, 719 So.2d at 130.
Plaintiffs asserted that the foregoing statutory and regulatory provisions violate their right to substantive due process because they are arbitrary, capricious, and are not rationally related to a legitimate government interest. With regard to the medical director review process, we find that plaintiffs have failed to present any evidence that the detailed medical director review process, which streamlines and expedites the review process, is arbitrary or that it is not rationally related to the government's interest in insuring that health care services are delivered to injured workers in an efficient and timely manner. The fact that plaintiffs do not agree with the process, i.e., that a medical director reviews the clinical data to determine if the requested medical treatment fits within the medical treatment schedule rather than simply deferring to the advice of the treating physician, does not establish that the process itself is arbitrary.[9]
Furthermore, with regard to review before an OWC judge, we find that plaintiffs have failed to establish the "clear and convincing" standard articulated in La. R.S. 23:1203.1(K) and LAC 40:I.2715(K)(1) is arbitrary, capricious, and not rationally related to a legitimate government interest. The "clear and convincing" standard in a workers' compensation case is an intermediate standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. Gilliam, 49,161 at p. 14, 146 So.3d at 744. To prove a matter by clear and convincing evidence means to demonstrate that the existence of the disputed fact is highly probably, in other words, much more probable than not. Bridges v. New Orleans Trucking and Rental Depot, Inc., 13-0769, p. 3 (La. App. 1st Cir. 12/27/13), 134 So.3d 633, 634.
Plaintiffs asserted that the higher clear and convincing evidence standard, as opposed to the lesser preponderance of the evidence standard under the old law, has no rational relationship to any government interest and merely deters appeals. However, as recognized by the supreme court in Church Mutual Insurance Company, the adoption of the medical treatment schedule adopts evidence-based medicine as the *391 guidepost for assessing whether the medical care required to be provided under La. R.S. 23:1203 is necessary, streamlining the process and doing away with the case-by-case disputes as to medical necessity. Church Mutual Insurance Company, 13-2351 at pp. 19-20, 145 So.3d at 284. Accordingly, because the guidelines determine medical necessity at the outset, it makes sense that in order to overcome the presumptively correct decision of the provider and/or medical director, that a claimant must meet the higher burden of establishing by clear and convincing evidence that the medical director's decision was not in accordance with the provisions of La. R.S. 23:1203.1. Furthermore, while plaintiffs assert that this higher standard deters appeals and is an impossible burden to overcome, Ms. Valois stated that she has received several reversals of medical director decisions at the OWC level.
Accordingly, we find that plaintiffs have failed to establish that the statutory and regulatory provisions detailing the process of appealing a denial of a request for authorization of treatment to the medical director and thereafter to an OWC judge violate the due process clauses of the federal and state constitutions, and the trial court erred in issuing a permanent injunction prohibiting defendants from apply and/or enforcing La. R.S. 23:1203.1(J)(1), (K), (M) ; La, R.S. 23:1314(D) and (E)(1), inclusive; LAC 40:I.2715(B)(3)(d), (e), and (f) ; and LAC 40:I.2715(E)(2), (F), (H), (I), (K), and (L).
Judicial Interference
Finally, defendants contend that the plaintiffs failed to establish that the OWC has influenced the OWC judges in violation of the separation of powers doctrine of the Louisiana Constitution.
The plaintiffs asserted that the OWC, a part of the executive branch of government, violated due process protections and the separation of powers by interfering with the judicial independence exercised by the OWC judges. Particularly, plaintiffs asserted that the OWC's process of "evaluating" judges, holding meetings to direct OWC judges on how they should rule in certain situations, and permitting ex parte communications from attorneys violates their right to due process and the separation of powers doctrine.
Mr. Hataway stated in his testimony that OWC judges are civil service employees and are therefore, employees of the executive branch. Mr. Hataway further stated that under the workers' compensation statute, the Director of the OWC is responsible for directing, supervising, and accounting for the actions of OWC judges. Mr. Hataway discussed an evaluation process adopted by the OWC, wherein a special assistant director, Carey Holliday, developed a method of reviewing how workers' compensation courts worked. This process, which only lasted two years and ended in early 2013, involved reviewing dead files and evaluating judges to identify inefficiencies. As part of the process, Mr. Holliday observed judges and prepared reports for review by the OWC director. These findings were subsequently forwarded to the individual judges for their review. However, as noted by Mr. Hataway, no judge was ever disciplined as a result of any findings. Furthermore, while Mr. Holliday acknowledged that he did question one judge regarding his ruling in a particular case, it was because his reasoning was not apparent from the decision. However, Mr. Hataway stated that Mr. Holliday was explicitly instructed not to weigh in on how the judges should rule in particular cases.
Mr. Holliday further stated that the executive director of OWC had a discussion with him about his concern for more uniformity *392 from OWC courts around the state, and he suggested to the executive director that while you cannot tell judges how to rule, you can put them together and let them talk about their decisions, and some conformity will come out of that. As such, the judges went from meeting once a year to four times a year. According to Mr. Holliday, at one of these meetings, Mr. Hataway mentioned that the position of the administration was that the medical treatment schedule is retroactive. Mr. Holliday, however, stated that each judge was left to make up their own decision. Mr. Hataway, while acknowledging that the new medical treatment was discussed at a judges meeting, denied instructing anyone how to rule. Ms. Valois, however, stated that while she was in court arguing whether the new medical treatment schedule was retroactive, Mr. Holliday was present and told her that she could not win that argument. Thereafter, the OWC judge hearing her case stated that she had been "instructed by the administration" that the medical treatment schedule was procedural and would be applied retroactively.
Judicial independence is the cornerstone of our legal system as recognized by Canon 1 of the Code of Judicial Conduct, which states that "[a]n independent and honorable judiciary is indispensible to justice in our society. In re Quirk, 97-1143, p. 6 (La. 12/12/97), 705 So.2d 172, 177.[10] Workers' compensation judges, as employees of the OWC within the Department of Labor, are not part of the judicial branch of government established by Article V of the Louisiana Constitution. See Albe v. Louisiana Workers' Compensation Corporation, 97-0581, 97-0014, p. 7 (La. 10/21/97), 700 So.2d 824, 828-829. However, the administrative adjudicatory process is subject to due process constraints, and an impartial decision-maker is essential to those requirements. See Butler v. Department of Public Safety and Corrections, 609 So.2d 790, 793 (La. 1992).
Accordingly, from our review of the record, we find that plaintiffs established by a preponderance of the evidence that defendants violated their due process rights by interfering with the judicial independence of the OWC judges by instructing them how to rule on matters pending before them, i.e., the retroactivity of the medical treatment schedule. As such, we find no error in the trial court's judgment permanently enjoining defendants from allowing anyone to attempt to communicate with OWC judges regarding pending workers' compensation claims by using any employee of the Louisiana Workforce Commission or the OWC as an intermediary. Nor do we find error in the portion of the trial court's judgment ordering that defendants shall take all action necessary to insure that all OWC judges and their staff are insulated from influence from any sources other than the facts and law presented to them on the record and that defendants take all action necessary to ensure that any appearance of improper influence with respect to OWC judges is eradicated in its entirety and to the fullest extent possible.
With regard to ex parte communications, we note that the Administrative Procedure Act prohibits ex parte communications, directly or indirectly, with an agency employee assigned to make findings of fact and conclusions of law in an adjudication, except upon notice and an opportunity for all parties to participate. See La. R.S. 49:960(A) ; Johnson v. Louisiana Department of Labor, Office of Workers' Compensation, 98-0690, p. 6 (La. App. 1st Cir. 5/14/99), 737 So.2d 898, 901. From *393 our review of the record, we find that plaintiffs have failed to establish that the receipt of complaints regarding OWC judges by defendants violated their due process rights. First, we note that at the time of trial, OWC had promulgated a rule regarding complaints concerning OWC judges, which is located at LAC 40:I.5534. This rule provides for the submission of complaints to the director, in writing. Of particular importance, LAC 40:I.5534(A)(5) provides:
if the alleged misconduct or disability concerns a specific matter pending before the judge, the complainant shall list all parties thereto and/or their counsel of record, and shall certify that a copy of the complaint has been provided to them via facsimile, or other electronic transmission, or by certified mail.
Furthermore, the evidence in the record also fails to establish that any complaints received by OWC violated due process by interfering with the independence of OWC judges. Mr. Holliday stated that if he received any complaints, he did not take any action or address the complaint with the OWC judge. Rather, Mr. Holliday stated that he forwarded the complaint to the medical director. Mr. Hataway acknowledged that because he was the Director of the OWC, he received complaints from attorneys about how particular judges were handling cases. However, Mr. Hataway stated that he did not respond to the complaints but merely forwarded them to the chief OWC judge.
As such, the evidence admitted at the trial fails to establish that defendants interfered in matters pending before OWC judges by responding to any complaints or communications. Furthermore, the record is devoid of any evidence that ex parte complaints or communications were either forwarded by the defendants to the individual OWC judges or that the OWC judges received communications or complaints about matters pending before their court. As noted by Mr. Hataway, as the Director of the OWC, he received complaints about his employees. However, these communications were not forwarded to the parties responsible for rendering a decision. See Johnson, 98-0690, p. 6, 737 So.2d at 902.
Therefore, because the plaintiffs failed to establish that ex parte communications to the defendants actually were forwarded to or received by any OWC judges handling the matter that was the subject of the complaint, they failed to establish that there was a violation of due process. Furthermore, considering that the OWC has adopted a regulation adequately addressing any potential for future harm regarding complaints about OWC judges, the trial court erred in ordering the defendants to refrain from engaging in any off the record communications with party litigants or representatives of party litigants on matters concerning pending workers' compensation claims, unless counsel for all parties are present and further ordering that if any communications are received, the defendants shall notify opposing counsel and provide a copy of the communication to him or her.
Answer to the Appeal
Plaintiffs have filed an answer to the appeal, seeking an award of attorney's fees, costs, and expenses for services performed on appeal pursuant to 42 U.S.C. Sec. 1988. However, because we reversed the trial court's judgment on plaintiffs' federal constitutional claims, we find that plaintiffs are not entitled to attorney's fees for work performed on appeal.
CONCLUSION
Based on our foregoing review of the record, we affirm the portion of the trial court judgment permanently enjoining defendants *394 from allowing anyone to attempt to communicate with OWC judges regarding pending workers' compensation claims by using any employee of the Louisiana Workforce Commission or the OWC as an intermediary. Nor do we find error in the portion of the trial court's judgment ordering that defendants shall take all action necessary to insure that all OWC judges and their staff are insulated from influence from any sources other than the facts and law presented to them on the record and that defendants take all action necessary to insure that any appearance of improper influence with respect to OWC judges is eradicated in its entirety and to the fullest extent possible. In all other respects, we reverse the judgment of the trial court. Additionally, because we reverse the trial court's judgment regarding plaintiffs' federal constitutional claims, we dismiss their answer to the appeal seeking attorney's fees, costs, and expenses for work performed on appeal. All costs of this appeal are assessed equally between the parties.
AFFIRMED IN PART; REVERSED IN PART; ANSWER TO APPEAL DISMISSED.
Pettigrew, J. concurs by

Janice Hebert Barber and Jennifer Barber Valois are attorneys who alleged in their petition that they regularly practice workers' compensation law and they have clients who have been adversely affected by the defendants' application of the statutes and regulations at issue. John H. Fairbanks, M.D., John H. Logan, M.D., and Pierce D. Nunley, M.D. are physicians who alleged in their petition that they treat injured workers who have been adversely affected by the defendants' application of the statutes and regulations at issue.

Defendants filed a motion for suspensive appeal to the supreme court, or in the alternative and only to the extent that the supreme court may determine that it does not have original jurisdiction over the appeal, to this court. After finding that it lacked appellate jurisdiction because the trial court's judgment did not declare any law or ordinance unconstitutional, the supreme court transferred the appeal to this court. Barber v. Louisiana Workforce Commission, 17-0750, pp. 1 (La. 6/5/17), 221 So.3d 38, 39 (Barber III).

Because we find that the record demonstrates that Edwards has standing to bring this action challenging the constitutionality of certain provisions of La. R.S. 23:1203.1 and its implementing regulations and certain provisions of La. R.S. 23:1020.1 and 23:1314, we do not need to address whether Cormier, who received his requested medical treatment, has standing to raise these issues. See Latour v. State, 00-1176, p. 6 n.6 (La. 1/29/01), 778 So.2d 557, 560 n.6.

We note that plaintiffs do not contend that this statutory provision unconstitutionally delegates legislative authority; rather, they argue that defendants have exceeded the authority that the legislature has granted them.

Defendants also assert that the plaintiffs failed to meet their burden of proving that LAC 40:I.2715(E)(2) and (H) violate their procedural due process rights. However, we note that plaintiffs only asserted in the trial court that these provisions violated their substantive due process rights.

In fact, Ms. Valois acknowledged in her testimony that she understands that she has to search other state's guidelines under La. R.S. 23:1203.1(D)(5) in order to determine if the requested treatment falls within La. R.S. 23:1203.1(M)(1).

Additionally, we note that once a claimant proves that no other state has adopted medical treatment guidelines addressing the requested treatment, the claimant has an opportunity under La. R.S. 23:1203.1(M)(2), which refers to La. R.S. 23:1203.1(C), to establish that a preponderance of the scientific medical evidence supports approval of the treatment.

In order to prove a violation of due process, a plaintiff must first establish the existence of a constitutionally protected property or liberty interest. Boudreaux, 11-0410 at p. 13, 110 So.3d at 170. As noted in our discussion supra regarding plaintiffs' claim that the tacit denial provisions violate their right to substantive due process, plaintiffs have established a property interest in the claim for workers' compensation benefits for purposes of due process.

We note that plaintiffs also state that the medical director review process is arbitrary because a medical director who has no training in the particular specialty at issue can substitute his medical opinion for that of the treating physician. However, as acknowledged by Dr. Rich, Mr. Hataway, and Ms. Valois in their testimony, the medical director does not perform an independent medical evaluation of the evidence but solely determines based on the clinical data whether the treatment is within the medical treatment schedule.

The Code of Judicial Conduct is applicable to OWC judges. See La. Admin. Code 40:5533(B) (promulgated pursuant to La. R.S. 23:1310.1(C).